**LORAM MAINTENANCE OF WAY, INC., Petitioner,**

v.

**David IANNI, Respondent.**

No. 04–0666.

Supreme Court of Texas.

Argued Nov. 29, 2005.

Decided June 30, 2006.

Rehearing Denied Feb. 2, 2007.

Mike A. Hatchell, Molly H. Hatchell, Christopher Benjamin Dove, Locke Liddell & Sapp, LLP, Austin, Cynthia S. Anderson, Milton Carey Colia, Ken Slavin, Kemp Smith LLP, El Paso, for petitioner.

Gordon Stewart, Gary A. Reaves, Calhoun, Vinson & Reaves, L.L.P., El Paso, for respondent.

Kathleen Cassidy Goodman, Boerne, for amicus curiae.

Justice GREEN delivered the opinion of the Court.

In general, an employer owes no duty to protect the public from the wrongful acts of its off-duty employees that are committed off the work site unless the employer exercises control over the employees' off-duty activities that cause harm. *See Otis Eng'g Corp. v. Clark,* 668 S.W.2d 307, 309, 311 (Tex.1983). Here, we are asked to decide whether an employer owes a duty to protect the public from an employee's wrongful off-duty conduct, even though the employer exercised no control over the employee's off-duty activities, because the employer knew its employee was drug-impaired and had threatened violence to others. We conclude that the employer owes no such duty.

## I. Factual Background

Loram Maintenance of Way, Inc. refurbishes railroad tracks by utilizing a very large, complex machine that rides along the rails while grinding the rails back into their proper profile. Because of the nature of the work, Loram's employees are constantly on the road, working twelve-hour shifts. They travel with their families, staying in motels paid for by Loram.

Roger Tingle worked for Loram and traveled with his wife. Tingle was also an enthusiastic participant in an illegal drug culture that was allowed to flourish among the employees at Loram. He had been using methamphetamine on and off the job for ten months before the incident that led to this lawsuit. He testified that he only took the drug for recreational purposes, or to stay awake during work after partying,[1] but there was also evidence that Tingle's supervisor and co-workers used the drug, and that Tingle's supervisor had given Tingle time off to purchase more.

Because of his heavy methamphetamine use, Tingle became moody and mentally unstable. In the weeks and days leading up to the incident, Tingle was seen using the drug at work, and he threatened one of his wife's friends with a knife. Those incidents were reported to Loram management.

On the day of the incident, while at work, Tingle reportedly spoke of attacking his wife. After their shift ended, he and his co-workers were driven back to the motel where they were housed with their families. Later that day, Tingle got into an argument with his wife, forced her into their car, and began to drive out of the motel parking lot. When he threatened his wife with a gun, she jumped out of the

car screaming for help. David Ianni, an El Paso police officer, was leaving a nearby restaurant when he witnessed the altercation and went to her aid. When Tingle got out of his car to pursue his wife, Ianni tried to intervene. Tingle then shot Ianni, seriously injuring him.

Ianni sued Loram, claiming it was negligent in retaining an incompetent, unfit, or dangerous employee; in failing to properly control and supervise Tingle; and in encouraging drug use. He also claimed Loram aided and abetted Tingle's drug use. The jury found Loram's negligence proximately caused Ianni's injuries and that Loram's supervisors were vice principals. Ianni was awarded $800,000 in actual damages and $500,000 in punitive damages. The Eighth Court of Appeals affirmed the trial court's judgment, holding that Loram owed Ianni a duty because of its negligent exercise of control over Tingle while he was incapacitated. 141 S.W.3d 722, 729 (Tex.App.–El Paso 2004, pet. granted) (citing *Otis Eng'g*, 668 S.W.2d at 311). Loram contends it owed no duty to Ianni because, even if it was negligent in supervising Tingle while he was on duty, it did not exercise any control over Tingle's wrongful activities while he was off duty. We granted Loram's petition for review to decide the duty issue. 48 TEX. SUP. CT. J. 1042 (Sept. 16, 2005).

## II. Law of the Case

■ We first address Ianni's argument that Loram's duty issue should not be reviewed in this appeal because it was decided in a previous appeal and is now the "law of the case." *See Hudson v. Wakefield*, 711 S.W.2d 628, 630 (Tex.1986). Loram initially obtained a summary judgment that it owed no duty to Ianni. Ianni

---

1. Tingle and other members of the crew used methamphetamine to "party" and would not sleep for days. Consequently, they would have to take even more methamphetamine to be awake enough to work.

appealed, and the court of appeals held that the summary judgment in Loram's favor was improper on the duty issue and remanded the case to the trial court. *Ianni v. Loram Maint. of Way, Inc.,* 16 S.W.3d 508, 527 (Tex.App.–El Paso 2000, pet. denied) (*"Ianni I"*). Loram then petitioned for review in this Court, which we denied. 43 TEX. SUP. CT. J. 1213 (Sept. 14, 2000). Our denial of the petition for review in *Ianni I* does not preclude us from reviewing the duty issue now.

■ "The 'law of the case' doctrine is defined as that principle under which questions of law decided on appeal to a court of last resort will govern the case throughout its subsequent stages." *Hudson,* 711 S.W.2d at 630. We have held that declining to review a case is not evidence that the Court agrees with the law as decided by the court of appeals. *See Trevino v. Turcotte,* 564 S.W.2d 682, 685 (Tex.1978) (holding that a court of appeals' conclusion was not binding under the "law of the case" doctrine when the petitioner's first writ of error was denied by this Court as "writ refused, no reversible error"); *City of Houston v. Jackson,* 192 S.W.3d 764, 769 (Tex.2006) (holding that even though a previous petition for review on the matter was dismissed by this Court, the Court could review the issue in a later petition to this Court after remand). The denial or dismissal of a petition does not give any indication of this Court's decision on the merits of the issue. *See* TEX. R. APP. P. 56.1(b)(1); *Matthews Constr. Co., Inc. v. Rosen,* 796 S.W.2d 692, 694 n. 2 (Tex.1990). Since the "law of the case" doctrine is inapplicable, we will address Loram's complaint that it owed no duty.

## III. Employer Liability for Employee's Off–Duty Conduct

■ "Under Texas law, in the absence of a relationship between the parties giving rise to the right of control, one person is under no legal duty to control the conduct of another, even if there exists the practical ability to do so." *Graff v. Beard,* 858 S.W.2d 918, 920 (Tex.1993). The employer-employee relationship can give rise to this kind of duty. *Greater Houston Transp. Co. v. Phillips,* 801 S.W.2d 523, 525 (Tex.1990). But it is a narrow duty; typically an "employer is liable only for the off-duty torts of his employees which are committed on the employer's premises or with the employer's chattels." *Otis Eng'g,* 668 S.W.2d at 309.[2] In addition, "when, because of an employee's incapacity, an employer exercises control over the employee, the employer has a duty to take such action as a reasonably prudent employer under the same or similar circumstances would take to prevent the employee from causing an unreasonable risk of harm to others." *Id.* at 311 (citing without adopting RESTATEMENT (SECOND) OF TORTS § 319 (1965) ("One who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm.")); *see Greater Houston Transp. Co.,* 801 S.W.2d at 526 ("We imposed the duty upon the employer [in *Otis Engineering* ], not because of the mere knowledge of the intoxication, but because of the employer's *negligent exercise of control* over the employee.").[3]

---

**2.** Ianni does not contend that the shooting incident occurred at a site controlled by Loram or that Tingle was using company equipment at the time.

**3.** We also note that section 317 of the Restatement says that an off-duty employee must be using company equipment or property at the time of the incident for the employer to have a duty to third parties for the employee's

■ Therefore, simply knowing that an employee is intoxicated or incapacitated is not enough for a duty to arise. *Otis Eng'g,* 668 S.W.2d at 309; *Greater Houston Transp. Co.,* 801 S.W.2d at 526. Rather, the employer must affirmatively exercise control over the incapacitated employee. *See Otis Eng'g,* 668 S.W.2d at 309, 311. Once affirmative action has been taken for the benefit of another, the employer has a duty to act with reasonable care, even if the employer initially had no duty to act. *Id.; see also Colonial Sav. Ass'n v. Taylor,* 544 S.W.2d 116, 119–20 (Tex.1976) ("[O]ne who voluntarily undertakes an affirmative course of action for the benefit of another has a duty to exercise reasonable care that the other's person or property will not be injured thereby."). Thus, while an employer·owes no duty to act to control the conduct of an impaired off-duty employee, if the employer does decide to act, its duty is "to avoid any affirmative act which might worsen the situation." *Otis Eng'g,* 668 S.W.2d at 309.

In *Otis Engineering,* the employer knew that the employee was intoxicated and sent him home because of his intoxication. *Id.* at 308. While driving home, the employee caused a fatal accident. *Id.* This Court held that the employer owed a duty to third persons, not because it knew its employee was intoxicated, but because the employer decided to deal with its employee's intoxication by exercising affirmative control, including suggesting that he drive home. *Id.* at 311. In other words, when

the employer acted, it made the situation worse.

■ In this case, the shooting incident did not occur until at least an hour after Tingle was already off duty and at the motel. There is no evidence that Loram was exercising any control over Tingle at that time because of his agitated mental state or for any other reason. Instead, the evidence shows only that Loram employees knew Tingle was agitated when he was driven to the motel when his shift ended.[4] And as we have stated, mere knowledge of an impaired condition is not sufficient to impose a duty. *Otis Eng'g,* 668 S.W.2d at 309; *Greater Houston Transp. Co.,* 801 S.W.2d at 526.

Ianni additionally argues that, even if Loram did not exercise affirmative control over Tingle in response to his agitated mental state, it owed a duty to Ianni under our holding in *Texas Home Management v. Peavy,* 89 S.W.3d 30 (Tex.2002). In *Peavy,* we held that a facility for mentally-impaired residents, which was required to supervise and control the comings and goings of those state-ordered residents, could have a duty to exercise proper control over its residents. *See id.* at 32, 39. However, duties involving responsibility for another's actions are based on a number of factors, including the kind of relationship between the parties. *Id.* at 33–34. The relationship in *Peavy* was one where the facility had continuous, supervisory control over a mentally-impaired resident because the state had ordered him to live there. *Id.* at 32, 34. That is significantly different from

conduct. *See* RESTATEMENT (SECOND) OF TORTS § 317 (1965) (stating that an employer has a duty to exercise reasonable care to keep an employee from causing an injury to others if the employee is off duty but using company equipment or on company property at the time of the incident).

4. It is not clear whether Tingle's supervisor was aware of his condition at this time or whether the supervisor's knowledge would be sufficient to bind the company. But for purposes of this analysis, we assume without deciding both that the supervisor knew and that his knowledge was binding on the company.

the relationship between employers and employees, where supervision and control are usually based on a limited work task or period. The duty standard in *Peavy* does not apply to this case.

\*　　\*　　\*　　\*　　\*　　\*

Based on the facts surrounding the occurrence in question, we conclude that Loram owed no duty to Ianni with respect to Tingle's off-duty conduct.[5] Because Loram owed no duty, we need not reach the remaining issues. We reverse the court of appeals' judgment against Loram and render a take-nothing judgment in Loram's favor.

Justice O'NEILL filed a concurring opinion, in which Chief Justice JEFFERSON joined.

Justice O'NEILL, joined by Chief Justice JEFFERSON, concurring.

I write separately to emphasize that the Court's decision in no way condones the alleged action of Loram supervisors in tolerating, and sometimes even encouraging, methamphetamine use among employees. If those allegations are true, as the jury by its verdict impliedly found, then criminal prosecution would be warranted and hopefully pursued. But the issue that confronts the Court today is different: whether Loram may be held civilly liable for the actions of its off-duty employee over whom it had no control when Ianni was injured. As to this question, I agree with, and fully join, the Court's opinion.

---

5. "[T]he existence of duty is a question of law for the court to decide from the facts surrounding the occurrence in question." *Greater Houston Transp. Co.,* 801 S.W.2d at 525.