**NABORS DRILLING, U.S.A., INC., Petitioner,**

v.

**Francisca ESCOTO, et al., Respondents.**

**No. 06–0890.**

Supreme Court of Texas.

Argued Feb. 5, 2008.

Decided June 19, 2009.

---

Reagan W. Simpson, King & Spalding LLP, Austin, TX, Amy Eikel, Anne Taylor Hill, King & Spalding LLP, James M. Tompkins, Galloway Johnson Tompkins Burr & Smith, Houston TX, Sharon E. Callaway, Michael J. Murray, Crofts & Callaway, P.C., San Antonio, TX, for Petitioner.

Alex M. Miller, Watts Law Firm, L.L.P., San Antonio, TX, Ray R. Marchan, Law Office of Ray Marchan, Brownsville TX, for Respondents.

Stacy R. Obenhaus, Gardere Wynne Sewell LLP, Dallas, TX, Kathleen Cassidy Goodman, Law Office of Kathleen C. Goodman, PLLC, Boerne, TX, for Amicus Curiae Pacific Legal foundation.

Justice GREEN delivered the opinion of the Court.

Employers in Texas generally do not owe a duty to third parties for the tortious activities of off-duty employees occurring off the work site. *Loram Maint. of Way, Inc. v. Ianni,* 210 S.W.3d 593, 594 (Tex.2006). We have recognized a limited exception to this rule when an employer exercises control over the injury-causing conduct of its employee, imposing a duty, for example, when an employer sent an obviously intoxicated employee to drive home, *Otis Eng'g Corp. v. Clark,* 668 S.W.2d 307, 308, 311 (Tex.1983), and when an employer required its employee to consume alcohol while on the job, *D. Houston, Inc. v. Love,* 92 S.W.3d 450, 457 (Tex.2002). In this case, we consider whether such a limited duty should extend to an employer

whose work conditions could induce extreme fatigue in its employees. For the reasons expressed below, we hold that the employer had no duty to prevent injury due to the fatigue of its off-duty employee or to train employees about the dangers of fatigue.

## I

Nabors Drilling U.S.A., Inc., the largest land-based driller in the continental United States, hired nineteen-year-old Robert Ambriz to work in its oil fields. Nabors's work schedule required that Ambriz work twelve-hour day shifts from 6:00 a.m. to 6:00 p.m. one week, take a week off, and then work twelve-hour night shifts from 6:00 p.m. to 6:00 a.m. the following week. After working approximately four months at several of Nabors's sites, Ambriz was sent to work at Nabors's McCook site, where he began with a week of night shifts. The supervisor inspected the crew the evening that Ambriz started his first shift, to ensure that the employees were fit to work. Ambriz's shift ended at 6:00 a.m., and he left the site about ten minutes later. Just before he left, a coworker who did not believe that Ambriz looked or acted tired told Ambriz to stay at the work site in trailers provided by Nabors, but Ambriz chose to leave. While driving along a farm-to-market road at approximately 6:30 a.m., Ambriz crossed to the wrong side of the road and collided with a vehicle driven by Martin Rodriguez and occupied by Robert Escoto, Jose Gutierrez, and Leovarda Torres. The accident resulted in the death of Ambriz, Rodriguez, and all three passengers.

On behalf of themselves, the decedents' estates, and others, Fransisca Escoto, Dora Rodriguez, and Noelia Torres (collectively, Escoto) sued Ambriz's estate and Nabors. Escoto alleged that the negligence of both Ambriz and Nabors caused the collision, and sought various forms of money damages. The jury found that Ambriz was 57% responsible for the accident and Nabors was 43% responsible, and awarded Escoto $5.95 million. However, the trial court signed a take-nothing judgment, ruling that Nabors owed Escoto no duty. The court of appeals reversed, holding that Nabors owed the plaintiffs a duty and rejecting Nabors's other arguments in support of the take-nothing judgment. 200 S.W.3d 716 (Tex.App.-Corpus Christi 2006).

## II

### A

The existence of a duty is a question of law. *E.g., Tri v. J.T.T.,* 162 S.W.3d 552, 563 (Tex.2005); *Fort Bend County Drainage Dist. v. Sbrusch,* 818 S.W.2d 392, 395 (Tex.1991) (reviewing judgment notwithstanding the verdict and recognizing that "[t]he existence of a legal duty is a question of law for the court although in some instances it may require the resolution of disputed facts or inferences which are inappropriate for legal resolution"). Negligence actions in Texas require "a legal duty owed by one person to another, a breach of that duty, and damages proximately caused by the breach." *Love,* 92 S.W.3d at 454 (citing *El Chico Corp. v. Poole,* 732 S.W.2d 306, 311 (Tex.1987)). "Liability is grounded in the public policy behind the law of negligence which dictates every person is responsible for injuries which are the reasonably foreseeable consequence of his act or omission." *El Chico Corp.,* 732 S.W.2d at 315. Generally, "one person is under no duty to control the conduct of another, even if he has the practical ability to exercise such control." *Otis,* 668 S.W.2d at 309 (internal citation omitted). An employer ordinarily will not be liable for torts committed by off-duty employees except when the torts were

committed on the employer's premises or with the employer's chattels. *Id.* (citing RESTATEMENT (SECOND) OF TORTS § 317 (1965)). As a general rule, "an employer owes no duty to protect the public from the wrongful acts of its off-duty employees that are committed off the work site." *Ianni*, 210 S.W.3d at 594.

We have recognized limited exceptions to that general rule, though. "[C]ertain relationships do impose, as a matter of law, certain duties upon parties." *Otis*, 668 S.W.2d at 309; *accord Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex.1990); RESTATEMENT (SECOND) OF TORTS § 315 (1965).[1] We have held, for example, that under certain circumstances the employment relationship may impose limited duties on employers to control the activities of employees. *See Love*, 92 S.W.3d at 457; *Otis*, 668 S.W.2d at 311. Those situations have arisen when an employer affirmatively exercised control over its employee because of that employee's incapacity, *see Otis*, 668 S.W.2d at 311, and when an employer required its employee to consume alcohol to the point of intoxication while working, *see Love*, 92 S.W.3d at 457. We conclude that neither of those exceptions applies to impose a duty here.

1

In *Otis Engineering Corp. v. Clark*, plaintiffs sued Otis Engineering Corp. for wrongful death after Robert Matheson, an Otis employee, caused a fatal automobile accident shortly after leaving work. 668 S.W.2d at 308. Matheson had a history of drinking on the job, and had gone to his car to consume alcohol several times on the day of the accident. *Id.* "Matheson's

extreme state of intoxication was well known to his supervisor and fellow workers," causing several employees to report to the Otis supervisor that Matheson was exhibiting signs of some incapacity, perhaps intoxication. *Id.* Halfway through his shift, the supervisor suggested that Matheson drive home. *Id.* While escorting Matheson to the parking lot, the supervisor asked if Matheson was all right and could make it home, and Matheson answered yes. *Id.* Matheson caused a fatal automobile accident thirty minutes later. *Id.* His blood alcohol level was 0.268, a level at which the medical examiner testified all persons would exhibit signs of intoxication observable to the average person. *Id.*

■ *Otis* began its duty analysis with the familiar observation that the "factors which should be considered in determining whether the law should impose a duty are the risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury and consequences of placing that burden on the employer." *Id.* at 309. But *Otis* viewed the ultimate question simply: "What we must decide is if changing social standards and increasing complexities of human relationships in today's society justify imposing a duty upon an employer to act reasonably when he exercises control over his servants." *Id.* at 310. Otis formulated the resulting duty principle by focusing on the existence of an incapacity, a sufficient risk of harm, and the employer's control over the employee:

> Therefore, the standard of duty that we now adopt for this and all other cases

1. *Cf. Buchanan v. Rose*, 138 Tex. 390, 159 S.W.2d 109, 110 (1942) ("Using familiar illustrations, it may be said generally, on the one hand, that if a party negligently creates a dangerous situation it then becomes his duty to do something about it to prevent injury to others if it reasonably appears or should appear to him that others in the exercise of their lawful rights may be injured thereby.").

currently in the judicial process, is: *when, because of an employee's incapacity, an employer exercises control over the employee, the employer has a duty to take such action as a reasonably prudent employer under the same or similar circumstances would take to prevent the employee from causing an unreasonable risk of harm to others.* Such a duty may be analogized to cases in which a defendant can exercise some measure of reasonable control over a dangerous person when there is a recognizable great danger of harm to third persons.

*Otis,* 668 S.W.2d at 311 (emphasis added). The Court held that Otis owed a duty to exercise reasonable care to control its employee. *Id.* "[In *Otis,*] [w]e imposed the duty upon the employer, not because of the mere knowledge of the intoxication, but because of the employer's negligent exercise of control over the employee. The defendant acted affirmatively in sending the drunken employee home and created an unreasonable and foreseeable risk of harm to others." *Phillips,* 801 S.W.2d at 526 (internal citations and emphasis omitted). In the present case, however, Nabors did not have the requisite knowledge of employee impairment, nor did it exercise the requisite control.

The court of appeals imposed a duty based on evidence that Nabors was aware of the dangers of fatigue and that a coworker from the night shift before the

accident testified that the shift was particularly exhausting, and "we were all tired." 200 S.W.3d at 725–26. However, the record contains no evidence that Nabors knew of any incapacity Ambriz may have exhibited. In fact, Ambriz's supervisor observed that Ambriz was "fit and ready to go to work" during his shift, and a coworker who saw Ambriz at the end of his shift testified that Ambriz did not look or act tired. Although that same coworker said generally that "we were all tired," he also testified that Ambriz "looked all right," that "[Ambriz] was fine," and although he believed it possible to determine if someone is tired by the way they act, Ambriz "didn't act like he was." Moreover, the record indicates that Ambriz never complained about fatigue, never had trouble staying awake while driving, and stayed in the trailers Nabors provided when he thought he was too tired to drive following his night shifts. *Otis* requires more than general awareness of employee fatigue—an employer must have actual knowledge that its employee was impaired when leaving work on the day of the accident. *See* 668 S.W.2d at 308, 311; *see also Goodyear Tire & Rubber Co. v. Mayes,* 236 S.W.3d 754, 758 (Tex.2007) (holding that an employer's general knowledge of an employee's lengthy commute and demanding work schedule does not prove knowledge that the employee "was an incompetent driver due to insufficient sleep").[2] The

---

**2.** *See also Duge v. Union Pac. R.R. Co.,* 71 S.W.3d 358, 362–64 (Tex.App.-Corpus Christi 2001, pet. denied) (finding no duty when employee who had worked twenty-seven hours "was not obviously impaired" and "did not know the extent of his own fatigue," so the employer "cannot be charged with such knowledge"); *McNeil v. Nabors Drilling USA, Inc.,* 36 S.W.3d 248, 250 (Tex.App.-Houston [1st Dist.] 2001, no pet.) (holding that *Otis* applies only when "the employer is aware of the employee's incapacity"); *Jenkins v. Kemlon Prods. & Dev. Co.,* 923 S.W.2d 224, 226

(Tex.App.-Houston [14th Dist.] 1996, no writ) (rejecting the argument that "allowing a tired employee to go home after work" imposed a duty on the employer); *J & C Drilling Co. v. Salaiz,* 866 S.W.2d 632, 638–39 (Tex.App.-San Antonio 1993, no writ) (finding no duty when employee was on twenty-four-hour call and had not slept in two or three days); *Moore v. Times Herald Printing Co.,* 762 S.W.2d 933, 935 (Tex.App.-Dallas 1988, no writ) (finding "no evidence of knowledge of incapacity"

evidence does not establish that Nabors had that requisite knowledge of any incapacity of Ambriz at the end of his shift.

Even if Nabors satisfied the knowledge component of the duty analysis, "simply knowing that an employee is intoxicated or incapacitated is not enough for a duty to arise. Rather, the employer must *affirmatively* exercise control over the incapacitated employee." *Ianni*, 210 S.W.3d at 597 (internal citations omitted and emphasis added). Unlike the employer in *Otis*, however, Nabors did not exercise any post-incapacity control over its employee. Ambriz completed his shift without incident and was not sent home early because of any impairment. Nabors did not instruct Ambriz to drive home or escort him to his car. *Cf. Robertson v. LeMaster*, 171 W.Va. 607, 301 S.E.2d 563, 567–68 (1983). The only control that Nabors exercised was in establishing work conditions and setting the shift work schedule, and thus occurred before any incapacity on Ambriz's part. But *Otis* requires an affirmative act of control following, and prompted by, the employee's incapacity. 668 S.W.2d at 311 (holding that an employer has a

duty "when, *because of an employee's incapacity*, an employer exercises control over the employee") (emphasis added); *see Robertson*, 301 S.E.2d at 567–68 (cited in *Otis*, 668 S.W.2d at 310–11, as support for imposing a duty on employers who affirmatively exercise control and send employees out on the highway after the employee's incapacity becomes apparent).[3] We have never extended *Otis* to create a duty where an employer's only affirmative act of control preceded the employee's shift and incapacity and amounted only to establishing work conditions that may have caused or contributed to the accident. *See Phillips*, 801 S.W.2d at 526 (noting that in *Otis*, "[t]he defendant acted affirmatively in sending the drunken employee home and created an unreasonable and foreseeable risk of harm to others").

Every other court of appeals to address the issue has rejected such a duty. *See Duge*, 71 S.W.3d at 364 (finding no duty when the employer "did not exercise control over an incapacitated employee who posed a foreseeable risk to others"); *McNeil*, 36 S.W.3d at 250 (holding that "an

---

where the employer required the employee to work about twenty hours in one day).

**3.** Other states also require an element of affirmative employer control before finding a duty to prevent fatigue-related accidents. *See Ex Parte Shelby County Health Care Auth.*, 850 So.2d 332, 339–40 (Ala.2002) (holding that an employer's statutory duty to provide "reasonably safe working conditions at the workplace" extends "only so far as [employers] have control over the physical conditions of the workplace and the premises of the workplace" and does not require employers to "schedul[e] work hours for employees in an attempt to ensure their safety traveling home from work"); *Baggett v. Brumfield*, 99–1484 (La.App. 3 Cir.), 758 So.2d 332, 337–38 (rejecting employer duty to prevent employees from driving home after working a twenty-one-hour shift, to provide sleeping quarters, or to keep employees from working such long shifts); *Fonder v. Workers' Comp. Appeal Bd.*

*(Fox Integrated)*, 842 A.2d 512, 514 (Pa. Commw.Ct.2004) (rejecting employer duty to prevent fatigue-related accident, even where a truck driver employee was engaged in work-related activities for forty-eight hours before the accident, but where employer provided employees with a sleep trailer to use); *Black v. William Insulation Co., Inc.*, 141 P.3d 123, 129–31 (Wyo.2006) (holding that an employer had no duty to prevent an automobile accident because the employer did not knowingly contribute to an employee's fatigue); *see also Pilgrim v. Fortune Drilling Co., Inc.*, 653 F.2d 982, 985–86 (5th Cir.1981) (holding that a Texas employer did not owe a duty to prevent employees from driving home "when they are so exhausted from working that their driving would create an unreasonable risk of harm to others" because the employer had no right to control the employee "once he had finished his day's work").

employer assumes a duty over its employee's off-duty conduct when the employer is aware of the employee's incapacity and affirmatively attempts to control the employee"); *Diamond M Onshore, Inc. v. Gutierrez*, No. 04–96–01030–CV, 1998 WL 553455, at *2 (Tex.App.-San Antonio Aug. 31, 1998, pet. denied) (not designated for pub.) (finding no duty when an employer did not exercise control to place an employee on the road before his shift was over because he was too tired to work); *Jenkins*, 923 S.W.2d at 226 (holding that an employer must "have knowledge of the employee's incapacity, and then exercise control over the incapacitated person") (emphasis omitted); *J & C Drilling Co.*, 866 S.W.2d at 639 (finding no duty when an employer did not take "any affirmative action to put [the employee] on the public highway" in a fatigued state but made available at the work site a trailer with a bed); *Moore*, 762 S.W.2d at 935 (finding no duty when an employer had taken no affirmative act to control an employee's decision to drive home after a lengthy shift). Likewise, a federal district court applying Texas law refused to recognize a duty based on "acts that came before the employee's incapacity." *Andrews v. United States*, 561 F.Supp.2d 707, 713–14 (E.D.Tex.2007) (holding that no duty existed when the Texas Army National Guard took no affirmative act to control a guard member's conduct because of an incapacity, even if the National Guard did have knowledge of the member's fatigue). We hold that because Nabors took no affirmative action as a result of any perceived employee fatigue or incapacity, as required by *Otis*, Nabors owed no legal duty to the plaintiffs in this case.

2

Escoto also argues that, under *D. Houston, Inc. v. Love*, the work conditions demanded by Nabors created a duty to take reasonable steps to prevent an off-duty employee's automobile accident caused by fatigue. *See* 92 S.W.3d 450. In *Love*, an employee sued her night club employer for negligence after she was injured in a car accident on the way home from work. *Id.* at 452–53. The night club employed Melissa Love as an independent contractor, but Love offered evidence that the club controlled her alcohol consumption through official employment manuals and informal instructions, requiring her to drink large amounts of alcohol during her shift. *Id.* at 452, 454–56. As Love was leaving the club at the end of her shift one night, after consuming at least twelve alcoholic beverages, the owner asked if Love was all right and she answered that she was "fine." *Id.* at 452. On her way home, Love's car struck a guardrail, resulting in serious physical injuries. *Id.* After the accident, Love's blood alcohol level was measured at 0.225, more than double the 0.10 legal limit at that time. *Id.* As in *Otis*, *Love 's* duty analysis focused on the incapacity, the risk of harm, and the employer's control:

> If [the employer] required Love to consume alcohol at work, it may well have compromised Love's ability to judge whether she was fit to drive. Therefore, we decline to hold as a matter of law that Love bears sole legal responsibility for her actions.
>
> Likewise, some might argue that [the employer] could not foresee that its negligence, if any, might have harmed Love. However, [the employer] allegedly required its worker to consume alcohol when she might not otherwise have chosen to do so. If proven, that conduct would impose a duty on [the employer] under Texas law. . . .
>
> . . . .
>
> We hold that when an employer exercises some control over its independent

contractor's decision to consume alcoholic beverages to the point of intoxication, such that alcohol consumption is required, the employer must take reasonable steps to prevent foreseeable injury to the independent contractor caused by drunk driving.

*Id.* at 456–57. Despite language restricting the holding to the limited facts, Escoto argues that *Love* is not limited to intoxication and applies generally to fatigue caused by workplace conditions.

Although we did recognize a duty to the independent contractor in *Love*, the facts of this case are significantly different, and nothing in *Love* demands that we recognize a duty to the general public in the fatigue context. In *Love*, drinking to the point of intoxication was a condition of employment, and the nightclub owner knew that Love would be impaired. *Id.* at 452, 454–56. In fact, Love's objectively measurable blood alcohol content was so high that her doctor opined she would have been "unmistakably intoxicated to anyone coming in contact with her . . . well beyond being too intoxicated to drive." *Id.* at 452. The record in the present case does not support a conclusion that impairment was a condition of Ambriz's employment, or even that it was an inevitable consequence of working for Nabors. In addition, the record does not establish actual knowledge of impairment, as we required of the employer in *Otis* and as was present in *Love*. The record in this case contains evidence that a coworker thought everyone who worked the shift must have been tired, but that same coworker testified that Ambriz did not look or act tired at the end of his shift, and that he spoke coherently with others for ten minutes before driving home. On these facts, we conclude that the limited duty recognized in *Love* does not apply.

Escoto argues that the principles expressed in *Otis* and *Love*, taken together, apply equally to employee fatigue. But we have never extended liability under these intoxication cases to incapacity related to fatigue, and we are not persuaded that we must do so now.[4] In fact, in *Loram Maintenance of Way, Inc. v. Ianni*, a case that did not involve employee intoxication, we held that an employer owes no duty to protect the public from an employee's wrongful off-duty conduct. 210 S.W.3d at 594. In that case, in which there was evidence that the employer knew about and sometimes even encouraged the use of methamphetamine by employees, we rejected a duty based on employer-created risk related to job conditions. *Id.* at 595, 597. *Ianni* was decided after *Love* but did not cite *Love*, instead concluding that *Otis* controlled and ruling that, for a duty to arise, "the employer must affirmatively exercise control over the incapacitated employee." *Id.* at 597. As we did in that case, we again hold that an employer owes no duty to protect the public from the tortious acts of an off-duty employee unless the employer affirmatively exercised control because of the employee's incapacity. *See id.* at 597–98. In this case, that

---

4. *See also Duge*, 71 S.W.3d at 363–64 (finding no duty where an employee worked a total of twenty-seven hours, was not sent home early, and gave no indication that he was fatigued); *McNeil*, 36 S.W.3d at 250–51 (involving an employee who worked a similar schedule as Ambriz, and holding that Nabors had no duty to monitor employees before allowing them to leave work); *Jenkins*, 923 S.W.2d at 225–27 (rejecting argument that the employer had a duty to prevent injury caused by fatigued driving because it had incapacitated the employee by overworking him); *J & C Drilling Co.*, 866 S.W.2d at 638–39 (finding no duty where an employee was on twenty-four-hour call and had not slept in two or three days); *Moore*, 762 S.W.2d at 934–35 (finding no duty where an employee worked twenty hours in one day).

control exception does not apply. We therefore need not decide whether *Otis* or *Love*, both involving intoxication, could extend that exception in a case involving an employee's excessive fatigue.

We note that fatigue is distinguishable from intoxication in significant respects. Unlike intoxication, there is no quantitative physical measure of fatigue that could be used to determine whether an employee is impaired. *Cf.* TEX. PENAL CODE § 49.01(2)(B) (establishing measurable legal blood alcohol limit of intoxication). An employer could inspect its employees for signs of fatigue at the end of each shift, as Nabors did at the beginning of each shift, but it is not clear that an employer could consistently judge when employees have gone beyond tired and become impaired. In addition, unlike intoxication, it is not clear that employers could effectively prevent impairment due to fatigue because amounts and types of work will affect employees differently, and an employee's off-duty conduct will affect when and how the employee may become fatigued.

3

■ Even if *Otis* and *Love* do not impose a duty, Escoto urges the Court to

recognize a new duty on Texas employers whose work conditions may contribute to fatigue in an off-duty employee. The decision to impose a new common law duty involves complex considerations of public policy including "social, economic, and political questions and their application to the facts at hand." *Humble Sand & Gravel, Inc. v. Gomez*, 146 S.W.3d 170, 182 (Tex. 2004). The Court balances "the risk, foreseeability, and likelihood of injury against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing that burden on the defendant." *Id.* (quoting *Praesel v. Johnson*, 967 S.W.2d 391, 397–98 (Tex.1998)). The Court also considers "whether one party would generally have superior knowledge of the risk or a right to control the actor who caused the harm." *Id.* Here, the court of appeals focused on foreseeability. 200 S.W.3d at 725–26. We acknowledge that traffic accidents may occur when drivers are excessively fatigued, but we do not believe that this generally known risk of driving while fatigued justifies holding an employer liable for an employee's off-duty fatigue-related automobile accident.[5]

Considering the large number of Texans who do shift work and work long hours

---

**5.** There is some debate among commentators about how questions of duty should be analyzed and whether we should apply a broad definition of duty, leaving questions regarding the reasonableness of defendants' conduct to juries, or apply more particularized, narrow duty rules that would shift some of the normative determinations to the courts. *See generally* William V. Dorsaneo, III, *Judges, Juries, and Reviewing Courts*, 53 SMU L.REV. 1497, 1531–33 (2000); William Powers, Jr., *Judge and Jury in the Texas Supreme Court*, 75 TEX. L.REV 1699, 1699–1719 (1997). The final draft of the Restatement (Third) of Torts: Liability for Physical Harm, which has been approved by the American Law Institute but not yet published in final form, recognizes this conflict. *See* RESTATEMENT (THIRD) OF TORTS: LIABILITY FOR PHYSICAL HARM, Chapter 3, § 7

(Proposed Final Draft No. 1, 2005). Comment a to section 7 states:

[A]ctors engaging in conduct that creates risks to others have a duty to exercise reasonable care to avoid causing physical harm. In most cases, courts can rely directly on § 6 and need not refer to duty on a case-by-case basis. Nevertheless, in some categories of cases, reasons of principle or policy dictate that liability should not be imposed. In these cases, courts use the rubric of duty to apply general categorical rules withholding liability.

*Id.* § 7 cmt. a. The parties presented the issue in this case as a duty question, and we apply duty principles in analyzing whether employers owe a duty to protect the public from accidents cause by fatigued, off-duty employees.

(including doctors, nurses, lawyers, police officers, and others), there is little social or economic utility in requiring every employer to somehow prevent employee fatigue or take responsibility for the actions of off-duty, fatigued employees. In *Love*, there was little or no social value involved in a nightclub owner compelling its employees to drink to intoxication while working. In this case, however, there is undeniable utility in allowing employers to require a productive day's work from its employees, even when shifts may be long. *See Nat'l Convenience Stores, Inc. v. Matherne*, 987 S.W.2d 145, 151 n. 15 (Tex.App.-Houston [14th Dist.] 1999, no pet.) ("In no event do we believe that an employer can be held to a duty to prevent or overcome the effects of fatigue that results from: (i) even a reasonably demanding work schedule, or (ii) factors arising outside the workplace.").

Escoto argues that Nabors affirmatively created a dangerous situation that posed a foreseeable risk to the public. Unlike *Otis* and *Love*, in which supervisors put clearly intoxicated workers on the road, Nabors did nothing to affirmatively create a risk of fatigue-related, off-duty accidents. Nabors merely established a shift work schedule and allowed its employees to decide for themselves if they were too tired to drive following their shifts. Under these facts, we cannot say that Nabors created any significant foreseeable risk of harm to Texas motorists. *See Swett v. United States*, No. 8:06–CIV–1805–T–24TGW, 2007 WL 1017664, at *4 & n. 2 (M.D.Fla. Mar.30, 2007) (citing but declining to follow the court of appeals' *Escoto* decision, and holding that "allowing [the employee] to leave work without assessing [his] physical condition, can not be said to have created any foreseeable zone of risk of harm to [third parties]").

█ Even if we assume that injury to third persons from employee fatigue is sufficiently foreseeable, foreseeability alone is not sufficient to create a new duty. *See, e.g., Love*, 92 S.W.3d at 456 ("We have declined to hold an alcohol provider liable for [drunk driving] injuries in some cases, not because the harm was unforeseeable, but because the defendant had no duty."); *SmithKline Beecham Corp. v. Doe*, 903 S.W.2d 347, 353 (Tex.1995) (finding no duty even assuming significant likelihood that defendant could and did foresee the relevant harm); *Bird v. W.C.W.*, 868 S.W.2d 767, 769 (Tex.1994) (acknowledging that the harm in question was foreseeable but finding no duty). A duty to protect the public from fatigued employees would impose a substantial burden on employers, which we do not believe can be reasonably justified. Employers would have to inspect employees for signs of fatigue impairment, but as we already noted, no quantitative measure or criteria are available to determine an employee's level of fatigue or assess whether an employee is merely tired or is actually incapacitated. In addition, employers would be compelled to take steps to eliminate fatigue at work, a very difficult task when no certain amount or type of work is known to consistently cause fatigue impairment in all persons, and when an employee's off-duty conduct will affect his level of fatigue. In this case, for example, the evidence indicates that Ambriz had been awake for twenty hours before the accident, but Nabors only had control over Ambriz for the last twelve of those hours. Even Escoto's expert, Dr. Samuel Schiflett, conceded that off-duty factors such as an employee's commute length, lifestyle, sleep cycle during weeks off, sleep disorders, and medications can affect worker fatigue. Expecting employers to monitor or control such factors would be unreasonable, especially when the risk of driving while fatigued is within the common knowledge of all drivers, and employees generally know not to drive

when they are too tired. A duty that could, in effect, impose liability on employers for allowing employees to leave the work site if they exhibit any signs of possible fatigue would be far-reaching and onerous. *See Pilgrim,* 653 F.2d at 986 (recognizing that a Texas employer "had no legal ability [and no right] to exercise control over its employees after their shift was over by detaining those employees it determined to be too exhausted to drive," and concluding that a fatigued employee "was not subject to control by the company in any respect once he had finished his day's work"). Because "an employer owes no duty to act to control the conduct of an impaired off-duty employee," *Ianni,* 210 S.W.3d at 597, off-duty employees must be trusted to determine whether they are sufficiently rested to drive safely.[6]

## B

■■■ Escoto also argues that Nabors had an independent duty to train its employees, especially inexperienced employees, regarding the dangers of fatigue. Having held that there is no employer duty with respect to off-duty accidents involving fatigue, we also decline to create a new duty requiring employers to train employees about fatigue.

■■■ In the employment context, an employer has a duty to "warn an employee of the hazards of employment and provide needed safety equipment or assistance." *Jack in the Box, Inc. v. Skiles,* 221 S.W.3d 566, 568 (Tex.2007) (per curiam) (quoting *Kroger Co. v. Elwood,* 197 S.W.3d 793, 794 (Tex.2006) (per curiam)). The employee's age and experience in the work he is assigned should also be considered. *See Allen v. A & T Transp. Co., Inc.,* 79 S.W.3d 65, 70 (Tex.App.-Texarkana 2002, pet. denied) (citing *Farley v. M M Cattle Co.,* 529 S.W.2d 751, 754 (Tex.1975)). However, the employer "owes no duty to warn of hazards that are commonly known or already appreciated by the employee." *Skiles,* 221 S.W.3d at 568–69 (quoting *Kroger Co.,* 197 S.W.3d at 794, and holding that an employer had no duty to warn an employee about the dangers associated with using a ladder to jump over a lift gate, which was "common and obvious to everyone"); *see also Praesel,* 967 S.W.2d at 398 (declining to impose a duty on doctors to warn epileptic patients not to drive because "the risk that a seizure may occur while driving and the potential consequences should be obvious to those who suffer from epilepsy"); *Wilhelm v. Flores,* 195 S.W.3d 96, 98 (Tex.2006) (per curiam) (holding that there is no duty to warn about dangers of bee stings); *Kroger Co.,* 197 S.W.3d at 795 (holding that there is no duty to warn about dangers of using a vehicle doorjamb for leverage); *Caterpillar, Inc. v. Shears,* 911 S.W.2d 379, 382

---

6. Several other states have also declined to hold employers liable as a matter of law for employees' off-duty, fatigue-related automobile accidents. *See, e.g., Shelby County Health Care Auth.,* 850 So.2d at 335, 340 (respiratory technician); *Depew v. Crocodile Enter., Inc.,* 63 Cal.App.4th 480, 73 Cal.Rptr.2d 673, 678 (1998) (restaurant employee); *Swett,* 2007 WL 1017664, at *1, 4 (M.D.Fla. Mar.30, 2007) (citing *Hernandez v. Tallahassee Med. Ctr., Inc.,* 896 So.2d 839, 840–44 (Fla.Dist.Ct.App. 2005)) (postal employee); *Behrens v. Harrah's Ill. Corp.,* 366 Ill.App.3d 1154, 304 Ill.Dec. 303, 852 N.E.2d 553, 557 (2006) (casino worker); *Baggett,* 758 So.2d at 333–34 (carpenter); *Trusiani v. Cumberland & York Dist., Inc.,* 538 A.2d 258, 262 (Me.1988) (delivery truck driver); *Lesser v. Nordstrom,* 96–8121, 1998 WL 480832, at *3–6 (E.D.Pa. Aug.14, 1998) (department store employee) (citing *Hill v. Acme Mkts., Inc.,* 350 Pa.Super. 219, 504 A.2d 324 (1986)); *Black,* 141 P.3d at 125 (construction worker); *cf. Faverty v. McDonald's Rests. of Ore., Inc.,* 133 Or.App. 514, 892 P.2d 703, 705–09 (1995) (fast food worker); *Robertson v. LeMaster,* 171 W.Va. 607, 301 S.E.2d 563, 564, 569 (1983) (railroad employee).

(Tex.1995) (holding that there is no duty to warn of "obvious risks" that are common knowledge). Likewise, we do not impose a duty to train employees regarding the commonly-known dangers of driving while fatigued. *See J & C Drilling Co.,* 866 S.W.2d at 638 (rejecting argument that employer had a duty to instruct worker "on when to call for relief or how long to rest before driving the company car"); *Matherne,* 987 S.W.2d at 150–52 (rejecting duty to train employee regarding fatigued driving on the job, and holding that employer has no duty to warn or instruct an employee "with regard to dangers that are ordinarily incident to driving a vehicle and require no special skills or knowledge other than that expected of all licensed drivers"). In this case, it appears that the Nabors shift workers generally knew they should not drive while fatigued, and a police officer agreed that "it is just common sense, you know when you are too tired to drive." The testimony of Ambriz's mother, father, and a coworker all indicates that Ambriz knew not to drive if he was too tired. On the day of the accident, Ambriz had brought clothes, towels, and groceries to the job site and was apparently prepared to stay in a trailer. But at the end of his shift, Ambriz changed clothes, talked with coworkers for about ten minutes, mentioning that he wanted to go home to pick up his girlfriend, and ultimately left in his truck. We conclude that, because the risk associated with driving while fatigued is common knowledge and appears to have been appreciated by Ambriz, Nabors owed no duty to train employees about those risks. *See also Praesel,* 967 S.W.2d at 398 (recognizing that "[t]he consequences of placing a legal duty ... to warn may subject [employers] to substantial liability even though their warnings may not be effective to eliminate the risk in many cases," and "[w]e cannot simply assume that a person who is advised not to drive

will actually respond and refrain from driving").

## III

We hold that Nabors owed no duty to prevent injuries resulting from fatigue following an employee's shift-work schedule. We further hold that Nabors owed no duty to train its employees regarding the dangers of fatigue. We need not reach Nabors's remaining issues. Accordingly, we reverse the court of appeals' judgment and reinstate the trial court's judgment.