**Opinion filed August 26, 2021**



In The

# Eleventh Court of Appeals

_____

## No. 11-19-00256-CV
_____

**MARK WHEELER, CINDY WHEELER, JEREMY RICH, AND DAVID KISER, Appellants**

**V.**

**BRANDON SCOTT FREE, RINGO DRILLING I, L.P., AND RINGO MANAGEMENT COMPANY, L.L.C., Appellees**

**On Appeal from the 259th District Court**

**Shackelford County, Texas**

**Trial Court Cause No. 2010-070**

### O P I N I O N

This is a personal injury case arising from a single-vehicle accident. Appellants Mark Wheeler,[1] Jeremy Rich, and David Kiser were passengers in Brandon Scott Free's vehicle. Wheeler, Rich, Kiser, and Free all worked for

---

[1]Mark Wheeler's wife, Cindy Wheeler, is also an Appellant. Unless otherwise noted, all references in this opinion to "Wheeler" are to Mark Wheeler.

Appellees Ringo Drilling I, L.P. and Ringo Management Company, L.L.C. (collectively Ringo). At the time of the accident, Free was transporting Wheeler, Rich, and Kiser from an Allsup's Convenience Store in Taylor County to Ringo's drilling rig located in Throckmorton County.

Appellants filed suit against Free[2] and Ringo, alleging that the accident was caused by Free's negligence and that Ringo was vicariously liable for Free's negligence under the doctrine of respondeat superior. Appellants also alleged that Ringo was directly liable for the negligent hiring, training, and retention of Free. In a single issue, Appellants appeal the trial court's order granting summary judgment in favor of Ringo. We affirm.

*Background Facts*

Ringo employed Free, Wheeler, Rich, and Kiser as a drilling crew to operate one of its drilling rigs. Ringo produced summary judgment evidence that it was a subscriber to workers' compensation insurance at the time of the accident. Ringo also produced evidence that the crew would meet at a location in Abilene, get in a single vehicle, and then drive to the drill site.

Under Ringo's "Drive pay" policy, one member of the crew was paid a per diem to furnish transportation for himself and additional crew members to drive to the drill site. Jeff Kovach of Ringo testified at his deposition that the drive pay was for fuel and use of a personal vehicle. He further testified that the crew decided who among them is paid the drive pay. Logan McDonald, Ringo's human resources manager, testified that participation in the carpool was voluntary and that the crew members could have driven to the drilling rig on their own.

---

[2]Free has not filed a brief in this case. Additionally, Free did not join in Ringo's motion for summary judgment. However, the summary judgment order grants final judgment against Appellants in favor of all defendants, and it concludes with the following sentence: "This Order disposes of all parties and issues, and is final and appealable." Appellants do not complain on appeal of the inclusion of their claims against Free in the summary judgment order.

For this particular drill site, the driller, Kiser, was the crew member that was being paid drive pay, and the rate was $67.50 a day because the rig was located over fifty miles away from Ringo's office. On the date of the accident, however, Kiser's vehicle was inoperable. Kiser asked Free to drive that night, and Kiser paid for the fuel for Free's vehicle. Free testified that he did not receive drive pay for the date of the accident.

Ringo moved for traditional summary judgment, asserting that Appellants' negligence action was precluded by the exclusive remedy provision of the Texas Workers' Compensation Act (the Act).[3] *See* TEX. LAB. CODE ANN. § 408.001(a) (West 2015). In the alternative, for Appellants' respondeat superior claim against Ringo, Ringo asserted that Free was not in the course and scope of employment. Appellants moved for partial summary judgment, arguing that Ringo's human resources manager, McDonald, admitted during his deposition that Wheeler, Rich, and Kiser were not in the course and scope of their employment at the time of injury. The trial court granted summary judgment in favor of Ringo, but it did not specify the grounds for its decision.

*Analysis*

We review the trial court's grant of summary judgment de novo. *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018) (citing *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003)). When both parties move for summary judgment, we review the evidence presented by both sides and "render the judgment the trial court should have rendered." *SeaBright Ins. Co. v. Lopez*, 465 S.W.3d 637, 641–42 (Tex. 2015) (citing *Comm'rs Court of Titus Cty. v. Agan*, 940 S.W.2d 77, 81 (Tex. 1997)). When the trial court's order does not specify the

---

[3]Cindy Wheeler's negligence claims are barred insofar as the exclusive remedy provision applies because her claims are derivative of Wheeler's claims. *See Rodriguez v. Naylor Indus., Inc.*, 763 S.W.2d 411, 412 (Tex. 1989).

grounds for its summary judgment, we will affirm the summary judgment if any of the theories are meritorious. *Knott*, 128 S.W.3d at 216.

A party moving for traditional summary judgment bears the burden of proving that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Nassar v. Liberty Mut. Fire Ins. Co.*, 508 S.W.3d 254, 257 (Tex. 2017). To be entitled to a traditional summary judgment, a defendant must conclusively negate at least one essential element of the cause of action being asserted or conclusively establish each element of an affirmative defense. *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997). Evidence is conclusive only if reasonable people could not differ in their conclusions. *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005). If the movant initially establishes a right to summary judgment on the issues expressly presented in the motion, then the burden shifts to the nonmovant to present to the trial court any issues or evidence that would preclude summary judgment. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678–79 (Tex. 1979).

In its motion for summary judgment, Ringo alleged that Wheeler, Rich, and Kiser were in the course and scope of employment under the Act at the time of the accident and that the Act's exclusive remedy provision barred Appellants' negligence claims against Ringo. *See* LAB. § 408.001(a). In this regard, the Act provides that "[r]ecovery of workers' compensation benefits is the exclusive remedy of an employee covered by workers' compensation insurance coverage . . . for the death of or a work-related injury sustained by the employee." *Id.*

Whether Wheeler, Rich, and Kiser are subject to the Act's exclusive remedy provision is dependent on the manner in which the Act defines course and scope of employment. *See SeaBright Ins. Co.*, 465 S.W.3d at 642. Under the Act, a compensable injury is "an injury that arises out of and in the course and scope of employment for which compensation is payable under [the Act]." LAB.

4

§ 401.011(10). Course and scope of employment means "an activity of any kind or character that has to do with and originates in the work, business, trade, or profession of the employer and that is performed by an employee while engaged in or about the furtherance of the affairs or business of the employer." *Id.* § 401.011(12). The Act's definition of course and scope of employment requires "the injury to '(1) relate to or originate in, and (2) occur in the furtherance of, the employer's business.'" *SeaBright Ins. Co.*, 465 S.W.3d at 642 (quoting *Leordeanu v. Am. Prot. Ins. Co.*, 330 S.W.3d 239, 241 (Tex. 2010)).

Ringo also alleged that, for liability purposes, Free was not in the course and scope of his employment, and that it owed no duty to Appellants with respect to Free's act of driving the crew at the time of the accident. Whether Free was in the course and scope of employment at the time of the accident is determined under the common-law doctrine of respondeat superior. *See Painter v. Amerimex Drilling I, Ltd.*, 561 S.W.3d 125, 130–31 (Tex. 2018) (*Painter I*).

*Painter I* and its progeny demonstrates the difference in the source of the law for resolving the question of course and scope of employment. The claimants in *Painter I* were employees of Amerimex. *Id.* at 129. They sued Amerimex asserting that it was vicariously liable for the negligent conduct of another one its employees as he drove the crew away from a drilling rig. *Id.* In *Painter I*, the Texas Supreme Court determined that, under the common law, a fact issue existed as to whether the *driver* was acting within the course and scope of his employment at the time of the accident. *Id.* at 130–39. On remand, the El Paso Court of Appeals addressed whether the *passengers* were in the course and scope of employment under the Act. *Painter v. Amerimex Drilling I, Ltd.*, No. 08-19-00226-CV, 2021 WL 1345680, at *1 (Tex. App.—El Paso Apr. 12, 2021, no pet. h.) (*Painter II*).

We conclude as a matter of law that, under the common-law doctrine of respondeat superior, Free was not in the course and scope of his employment at the

5

time of the accident.  *See Painter I*, 561 S.W.3d at 130–39.  Accordingly, we do not address Ringo's contention that Wheeler, Rich, and Kiser were in the course and scope of employment under the Act at the time of the accident.

"Under the common-law doctrine of respondeat superior, or vicarious liability, 'liability for one person's fault may be imputed to another who is himself entirely without fault solely because of the relationship between them.'"  *Id.* at 130 (quoting *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 540 (Tex. 2002) (plurality op.)).  Vicarious liability is implicated in the employer–employee relationship if the employee's negligent acts were within the course and scope of his employment.  *Id.* at 131 (citing *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 757 (Tex. 2007)).  It is undisputed that Free was Ringo's employee.  The critical question to be answered in this case is whether Free was "doing his job" at the time of the accident.  *See id.* at 132.  This element "hinges on an objective assessment of whether the employee was doing his job when he committed a tortious act."  *Id.*

*Painter I* involved a driller that was driving fellow crew members to lodging away from the drilling rig.  *Id.* at 128–29.  There was summary judgment evidence that one of the driller's duties was to drive his crew to and from the drilling site and that he was paid a "bonus" for performing this task.  *Id.* at 133.  The court noted that, in the context of workers' compensation law, a "coming-and-going" rule has been recognized wherein an employer is generally not liable for the acts of its employees while traveling to and from work.  *Id.* at 136.  The court further noted that this rule has been extended to the vicarious-liability context.  *Id.* (citing *Mancil v. Stroud*, No. 11-13-00354-CV, 2016 WL 932949, at *3 (Tex. App.—Eastland March 10, 2016, no pet.) (mem. op.)).  The court recognized that an exception to the coming-and-going rule exists when the employee undertakes a "'special mission at the direction of his employer' or is otherwise performing 'a service in furtherance of [his] employer's business with the express or implied approval of [his] employer.'"

6

*Id.* (alterations in original) (quoting *J & C Drilling Co. v. Salaiz*, 866 S.W.2d 632, 636 (Tex. App.—San Antonio 1993, no writ); *Gebert v. Clifton*, 553 S.W.2d 230, 232 (Tex. App.—Houston [14th Dist.] 1977, writ dism'd)). The court found that a fact question existed as to whether the driller was in the course and scope because he was assigned the task of transporting the crew as a part of his job duties and he was compensated for this task. *Id.* at 138–39.

Appellants contend that at least a fact question exists as to whether Free was in the course and scope of his employment at the time of the accident because he was performing a specifically assigned task for the benefit of his employer at the time of the accident. We disagree. We first note that the facts in this case are distinguishable from the circumstances in *Painter I*. The driller in *Painter I* was specifically assigned the task of transporting the crew to and from the drill site. *Id.* at 133. He was also compensated for this task in the form of a payment referred to as a "bonus." *Id.* The driller testified that he would have looked for work elsewhere if he was not paid this compensation for transporting the crew. *Id.* at 133 n.10.

Here, a specific crew member was not assigned the task of transporting the crew to and from the drill site. Furthermore, the crew member who drove the crew to the drill site was not compensated for driving the crew—he only received a travel allowance. In this regard, Ringo's "drive pay" policy provided that the driller was responsible for designating on the time sheet the person that was to receive the drive pay for each "tour." The drive pay was $67.50 for distances of over fifty miles and it was $58.50 for distances under fifty miles. Thus, the drive pay paid by Ringo was basically reimbursement for the crew member's travel expenses for transporting the crew to the drill site.

The facts in this case are analogous to the facts in *Pilgrim v. Fortune Drilling Co.*, 653 F.2d 982 (5th Cir. 1981) (applying Texas law).[4] The employer in *Pilgrim* paid a travel allowance to a single member of the crew, the recipient of which was decided among the crew members.[5] 653 F.2d at 983. The employees were not on the payroll while traveling to and from the drill site. *Id.* As noted by the Texas Supreme Court in *Painter I*, the Fifth Circuit held in *Pilgrim* that "neither the long distance between the employees' homes and the remote work site nor the payment of a travel allowance to one crew member per day was sufficient to create a special mission for the employer's benefit that would remove the case from the ambit of the coming-and-going rule." *Painter I*, 561 S.W.3d at 137 (citing *Pilgrim*, 653 F.2d at 987–88).

We agree with the holding in *Pilgrim* that an employer's act of merely paying a travel reimbursement to an employee does not place the employee within the course and scope of employment for vicarious liability to be imposed against the employer. As applied to this case, Free was not specifically assigned the task of transporting the crew to the drill site. Furthermore, Free did not receive drive pay for the trip on the day of the accident. In fact, there is no evidence that any managers at Ringo even knew Free would be driving the crew on the date of the accident. As noted by the court in *Pilgrim*, the task of getting to and from the place of work is the responsibility of the employee, and his travel to a work site is not part of his service to his employer. 653 F.2d at 987–88. Furthermore, travel to a work site is not a mission with a special benefit to the employer so as to remove the employee from the coming-and-going rule. *Id.* at 987. Accordingly, we hold that the summary judgment evidence in the case before us conclusively established that Free was not

[4]We note that the opinion in *Pilgrim* was written by Judge Thomas M. Reavley, a former member of the Texas Supreme Court.

[5]As noted in the opinion, the travel allowance paid in *Pilgrim* was $25 in 1977. 653 F.2d at 983.

in the course and scope of his employment while driving himself and his fellow crew members to Ringo's drill site.

Our analysis is not complete, however, because Appellants also asserted claims of direct negligence against Ringo. Specifically, Appellants asserted that Ringo negligently hired, trained, and retained Free as an employee— because Ringo knew or should have known that Free was a reckless and incompetent driver.

"Negligent hiring, retention, and supervision claims are all simple negligence causes of action based on an employer's direct negligence rather than on vicarious liability." *See Dangerfield v. Ormsby*, 264 S.W.3d 904, 912 (Tex. App.—Fort Worth 2008, no pet.). Thus, a claim of negligent hiring, supervision, or retention is not dependent upon a finding that the employee was acting in the course and scope of his employment when the tortious act occurred. *Dieter v. Baker Serv. Tools, a Div. of Baker Int'l, Inc.*, 739 S.W.2d 405, 408 (Tex. App.—Corpus Christi–Edinburg 1987, writ denied). However, the plaintiff's injury must be the result of job-related conduct. *Peek v. Equip. Servs., Inc.*, 906 S.W.2d 529, 534 (Tex. App.—San Antonio 1995, no writ); *Dieter*, 739 S.W.2d at 408. "Were such a connection not required, an employer would essentially be an insurer of the safety of every person who happens to come into contact with his employee simply because of his status as an employee." *Dieter*, 739 S.W.2d at 408 (quoting *Bates v. Doria*, 502 N.E.2d 454, 459 (Ill. App. Ct. 1986)). This nexus requirement is an element of foreseeability, and foreseeability is an essential component of both proximate cause and duty. *Fernea v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 559 S.W.3d 537, 548 (Tex. App.—Austin 2011), *judgm't withdrawn, appeal dism'd*, No. 03-09-00566-CV, 2014 WL 5801862 (Tex. App.—Austin Nov. 5, 2014, no pet.) (mem. op.); *see Mellon Mortg. Co. v. Holder*, 5 S.W.3d 654, 659 (Tex. 1999).

Ringo asserted in its motion for summary judgment that it owed no duty to Appellants for an off-duty employee's act of driving coworkers to work. Ringo cited

9

*Nabors Drilling, U.S.A., Inc. v. Escoto*, 288 S.W.3d 401 (Tex. 2009), for this proposition. *Nabors Drilling* involved a claim against an employer for a vehicle accident caused by its employee who was alleged to be fatigued as a result of his work conditions. 288 S.W.3d at 404. The court held that the employer owed no duty for its off-duty employee's acts. *Id.* As noted by the court in *Nabors Drilling*, "[e]mployers in Texas generally do not owe a duty to third parties for the tortious activities of off-duty employees occurring off the work site." *Id.* at 403 (citing *Loram Maint. of Way, Inc. v. Ianni*, 210 S.W.3d 593, 594 (Tex. 2006)).[6] Exceptions to this rule have only been recognized in very limited circumstances when the employer exercises control over the injury-causing conduct of its employee. *Id.*

"The existence of a duty is a question of law." *Id.* at 404. "An employer ordinarily will not be liable for torts committed by off-duty employees except when the torts were committed on the employer's premises or with the employer's chattels." *Id.* at 404–05 (citing *Otis Eng'g Corp. v. Clark*, 668 S.W.2d 307, 309 (Tex. 1983)). "As a general rule, 'an employer owes no duty to protect the public from the wrongful acts of its off-duty employees that are committed off the work site.'" *Id.* at 405 (quoting *Ianni*, 210 S.W.3d at 594). The exceptions to this general rule are based on circumstances when the employer affirmatively exercises control over its employee. *Id.*

In order to impose a duty on an employer for its employee's off-duty and off-premises conduct, the employer must have actual knowledge of the employer's deficit and it must exercise actual control over the employee at the time of the negligent act. *Id.* at 406–07. As noted in *Pagayon v. Exxon Mobil Corp.*, 536

---

[6]As noted in *Nabors Drilling*, an employer has no duty to instruct an employee "with regard to dangers that are ordinarily incident to driving a vehicle and require no special skills or knowledge other than that expected of all licensed drivers." 288 S.W.3d at 413 (quoting *Nat'l Convenience Stores Inc. v. Matherne*, 987 S.W.2d 145, 149 (Tex. App.—Houston [14th Dist.] 1999, no pet.)).

S.W.3d 499, 506 (Tex. 2017), "an employer should have no duty to control an employee when it neither knows nor should know of the need and opportunity to do so." Ringo did not assign Free the job task of driving the crew to the drill site. Free did not perform any driving for Ringo. Furthermore, Ringo's management did not know that Free would be driving any crew members in his personal vehicle at the time of the accident. Thus, Free's alleged act of negligence was not related to his job, and Ringo had no control over Free's conduct at the time of the accident. Accordingly, Ringo had no duty to Appellants with respect to their claims arising from the accident. *See Nabors Drilling*, 288 S.W.3d at 404–07. We overrule Appellants' sole issue on appeal.

*This Court's Ruling*

We affirm the judgment of the trial court.

JOHN M. BAILEY
CHIEF JUSTICE

August 26, 2021

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.

11