Pascual DOMINGUEZ,
et al., Appellants,

v.

Edwin PAYNE, Appellee.

No. 13–00–741–CV.

Court of Appeals of Texas,
Corpus Christi–Edinburg.

Aug. 7, 2003.

Rehearing Overruled Sept. 11, 2003.

David J. Lumber, Harold Kenneth Tummel, Tummel & Casso, Mc Allen, for appellants.

Israel Ramon, Jr., Law Office of Israel Ramon, Jr., Mc Allen, for appellee.

Before Chief Justice VALDEZ and Justices HINOJOSA and CASTILLO.

## OPINION

Opinion by Chief Justice VALDEZ.

This is an appeal from a no-evidence

summary judgment. The appellants[1] raise two points of error: 1) the trial court erred in rendering a no-evidence summary judgment because the motion filed by the appellee was legally insufficient, and 2) the trial court erred in rendering a no-evidence summary judgment because the appellants met their burden by bringing forth more than a scintilla of evidence. We reverse the trial court's granting of a no-evidence summary judgment and remand this cause for further proceedings consistent with this opinion.

### Facts

Appellants purchased tracts of land from Tejas Building and Development Co., Inc. (Tejas), believing that the tracts were subject to use restrictions. Upon recognizing that other lots were being used as mobile home sites, they sued Tejas, Eddie Torres, the sales representative, and Edwin Payne, the majority shareholder, for misrepresentation, recision, and return of their payments. Payne filed a no-evidence motion for summary judgment, claiming that he could not be held personally liable to appellants for acts allegedly committed by Tejas's agent.

### Legal Sufficiency

■ The appellants argue in their first point of error that Payne's motion for summary judgment was legally insufficient as a matter of law because it failed to specifically challenge the evidentiary support needed. Payne argues that the allegations plead were legally sufficient to negate an element of appellant's claims.

■ In a no-evidence motion for summary judgment the movant should specifically state the elements as to which there is no evidence. Tex.R. Civ. P. 166a(i); *Ethridge v. Hamilton County Elec. Coop.,* 995 S.W.2d 292, 295 (Tex.App.-Waco 1999, no pet.). The rule requires a motion to be "specific in challenging the evidentiary support for an element of a claim or defense." Tex.R. Civ. P. 166a, cmt. It does not, however, require that the motion specifically attack the "evidentiary components that may prove an element of the cause of action." *In re Mohawk Rubber Co.,* 982 S.W.2d 494, 497–98 (Tex.App.-Texarkana 1998, orig. proceeding). As such, the specificity which is inherent in Texas Rule of Civil Procedure 166a(i) deals with evidentiary support for an element of a claim or defense, not for "evidentiary components." *Baker v. Gregg County,* 33 S.W.3d 72, 76 (Tex.App.-Texarkana 2000, no pet.). In *Baker,* the court held that the motion for no-evidence summary judgment before it conformed with rule 166a(i) because it stated the *elements* that were lacking. *Id.* at 76–77. That court reasoned that specificity in evidentiary components is not required. *Id.* (citing *Mohawk,* 982 S.W.2d at 497–98).

Appellants argue that Payne's motion for no-evidence summary judgment was insufficient. In his motion, Payne asserted that appellants failed to provide credible evidence as to hold Payne personally liable in his capacity as a shareholder, director or officer. More specifically, Payne listed the following elements of appellants' claims requiring evidence:

A.  That E.M. Payne committed or actively participated [in] any of the acts or omissions alleged by Plaintiffs to support their causes of action;

B.  That the corporate status of Tejas Building and Development Co., Inc.

---

1.  The appellants include Pascual Dominguez, Veronica Dominguez, Jaime Perez, Nora Perez, Juan Landeros, Leticia Tamez, Jose Alfredo Gonzalez, Margarita Gonzalez, Rumaldo Lozano, Pedro Lopez, and Blanca Lopez.

is used as a means of perpetrat[ing] a fraud;

C. That Tejas Building & Development Co., Inc. operates as [a] tool or business conduit of E.M. Payne;

D. That Tejas Building & Development Co., Inc.'s corporate status is used to evade an existing legal obligation;

E. That Tejas Building & Development Co., Inc.'s corporate status is used to achieve or perpetuate a monopoly;

F. That Tejas Building & Development Co., Inc.'s corporate status is used to circumvent a statute;

G. That Tejas Building & Development Co., Inc.'s corporate status is relied on as a protection of crime or to justify a wrong.

Upon examination of the record, we find that Payne's motion for no-evidence summary judgment adequately addresses the necessary elements needed to be proven by appellants in order to hold Payne personally liable. As such, Payne raised issues of no-evidence as to essential elements needed to hold him personally liable.

Appellants' first point of error is overruled.

*Non–Movant's Burden in a No–Evidence Summary Judgment*

Appellants argue in their second point of error that the trial court erred in rendering the no-evidence summary judgment because they provided sufficient evidence showing that Payne should be held individually liable under the theories of alter ego and ratification of fraudulent activity. The second point of error also argues that appellants purchased the lots as a result of

fraud committed by Tejas and/or its agent Torres.

■■■ Texas Rule of Civil Procedure 166a(i) provides that a no-evidence summary judgment is properly granted if the non-movant fails to bring forth more than a scintilla of probative evidence to raise a genuine issue of material fact. *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997). If the evidence supporting a finding rises to a level that would enable reasonable, fair-minded persons to differ in their conclusions, then more than a scintilla of evidence exists. *Id.* Less than a scintilla of evidence exists when the evidence is "so weak as to do no more than create a mere surmise or suspicion" of a fact, and the legal effect is that there is no evidence. *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex.1983).

■■■ Appellants assert that alter ego is one basis for disregarding the corporate entity, and therefore Payne may be held personally liable.

■■■ Alter ego is a basis for disregarding the corporate fiction, "where a corporation is organized and operated as a mere tool or business conduit of another corporation." *Castleberry v. Branscum*, 721 S.W.2d 270, 272 (Tex.1986)[2] (quoting *Pac. Am. Gasoline Co. of Texas v. Miller*, 76 S.W.2d 833, 851 (Tex.Civ.App.-Amarillo 1934, writ ref'd)). It applies "when there is such unity between corporation and individual that the separateness of the corporation has ceased and holding only the corporation liable would result in injustice." *Id.* (citing *First Nat'l Bank in Canyon v. Gamble*, 134 Tex. 112, 132 S.W.2d 100, 103 (1939)). Alter ego "is shown from the total dealings of the corporation and

---

**2.** *Castleberry* was overruled by the business corporation act to the extent that failure to observe corporate formalities is no longer a factor in proving alter ego. Tex. Bus. Corp. Act Ann. art 2.21(A)(3) (Vernon Supp.2003).

the individual, including the degree to which ... corporate and individual property have been kept separately, the amount of financial interest, ownership and control the individual maintains over the corporation, and whether the corporation has been used for personal purposes." *Id.* (citing *Lucas v. Texas Indus., Inc.,* 696 S.W.2d 372, 374 (Tex.1984)). Because disregarding the corporate fiction is an equitable doctrine, Texas takes a flexible fact-specific approach focusing on equity. *Id.* (citing *Gentry v. Credit Plan Corp. of Houston,* 528 S.W.2d 571, 575 (Tex.1975)).

In this case, Payne owned two-thirds of Tejas's stock, with the other one-third owned by his elderly father who was not active in Tejas's business. Since 1993, Payne and his father have been the only directors. The record also raises other fact questions as to alter ego; for example, in Payne's deposition testimony (which was offered in the motion to deny summary judgment) Payne testified that he neither knew his specific title nor who the other directors were. Tejas's corporate meetings were held at Payne's car dealership office. The record also shows that Payne used some of his personnel from the dealership to handle bookkeeping functions for Tejas. Moreover, the record reveals that of the $379,510.13 listed as accounts receivable in Tejas's balance sheet, $292,162.00 of that amount is allocated as accounts receivable payable to "EM Payne." *See Castleberry,* 721 S.W.2d at 272 (holding that alter ego is shown from the total dealings of the corporation).

█ Payne argues that these facts are not enough to pierce the corporate veil. He points to numerous cases that support the merits of his argument, such as the fact that if a majority or even all of the stock in a corporation is owned by a single individual, that, in and of itself, does not make the corporation the alter ego of the individual. *Massachusetts v. Davis,* 140

Tex. 398, 168 S.W.2d 216, 224 (1942). Payne also correctly notes that merely because a single person owns the vast majority of shares in a corporation, that evidence alone is not sufficient to establish that the corporation was the alter ego of an individual. *Aztec Mgmt. & Inv. Co., Inc.,* 709 S.W.2d 237, 239 (Tex.App.-Corpus Christi 1986, no writ). These arguments, persuasive as they are, address the merits of the case at the trial level, and while they may afford Payne a stronger argument in front of a jury, that still does not change the fact that reasonable, fair minds could differ on their conclusions. *Havner,* 953 S.W.2d at 711.

As such, appellants brought forth more than a scintilla of probative evidence, and the trial judge erred in rendering the motion for no-evidence summary judgment. *Whalen v. Condo. Consulting & Mgmt. Serv., Inc.,* 13 S.W.3d 444, 446 (Tex.App.-Corpus Christi 2000, pet. denied).

Appellants also argue in their second point of error that they met their burden of producing more than a scintilla of evidence regarding actions taken by Torres and Tejas. They cite extensive evidence showing that Torres misrepresented the use restrictions of the lots that the appellants purchased. This portion of appellants' brief, although detailed and extensive in its description of the alleged misrepresentation that took place, does not refer to Payne's individual liability in its analysis. As such it does not address the no-evidence summary judgment that was rendered in favor of Payne. Accordingly, we need not address the details of this portion of appellants' brief.

We REVERSE the trial court's granting of a no-evidence summary judgment and remand this cause for further proceedings consistent with this opinion.

Concurring and Dissenting opinion by Justice HINOJOSA.

HINOJOSA, Justice, concurring and dissenting.

I concur with the majority's opinion that appellants' first issue should be overruled because the motion for no-evidence summary judgment of appellee, Edwin M. Payne, adequately addresses the necessary elements needed to be proven by appellants in order to hold Payne personally liable.

I dissent from the majority's opinion because I conclude that appellants failed to produce more than a scintilla of probative evidence to raise a genuine issue of material fact on the issues of alter ego and ratification of fraudulent activity. Accordingly, I would overrule appellants' second issue and affirm the trial court's summary judgment.

### A. Standard of Review

When a motion for summary judgment is presented under Texas Rule of Civil Procedure 166a(i) asserting there is no evidence of one or more essential elements of the nonmovant's claims upon which the nonmovant would have the burden of proof at trial, the movant does not bear the burden of establishing each element of its own claim or defense. *Gen. Mills Rests., Inc. v. Tex. Wings, Inc.,* 12 S.W.3d 827, 832 (Tex.App.-Dallas 2000, no pet.); *Lampasas v. Spring Ctr., Inc.,* 988 S.W.2d 428, 432–33 (Tex.App.-Houston [14th Dist.] 1999, no pet.); *see also* Tex.R. Civ. P. 166a(i). Instead, the burden shifts to the nonmovant to present enough evidence to be entitled to a trial: evidence that raises a genuine fact issue on the challenged elements. *See* Tex.R. Civ. P. 166a cmt. If the nonmovant is unable to proffer enough evidence, the trial judge must grant the motion. *Lampasas,* 988 S.W.2d at 433. A no-evidence summary judgment is improper if the respondent brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact. *Merrell Dow Pharms., Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex.1997); *Zapata v. The Children's Clinic,* 997 S.W.2d 745, 747 (Tex.App.-Corpus Christi 1999, pet. denied). Less than a scintilla of evidence exists when the evidence is so weak as to do no more than create a mere surmise or suspicion of a fact. *Kindred v. Con/Chem, Inc.,* 650 S.W.2d 61, 63 (Tex.1983); *Zapata,* 997 S.W.2d at 747. More than a scintilla of evidence exists when the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Havner,* 953 S.W.2d at 711; *Zapata,* 997 S.W.2d at 747.

A no-evidence motion for summary judgment must state the elements as to which there is no evidence; rule 166a(i) does not authorize conclusory motions or general no-evidence challenges to an opponent's case. Tex.R. Civ. P. 166a(i) and cmt. The rule requires a no-evidence motion for summary judgment to be specific in alleging a lack of evidence on an essential element of the plaintiff's alleged cause of action, but it does not require that the motion specifically attack the evidentiary components that may prove an element of the cause of action. *Denton v. Big Spring Hosp. Corp.,* 998 S.W.2d 294, 298 (Tex. App.-Eastland 1999, no pet.); *In re Mohawk Rubber Co.,* 982 S.W.2d 494, 497–98 (Tex.App.-Texarkana 1998, no pet.) (orig.proceeding). The specificity requirement is designed to avoid conclusory no-evidence challenges to an opponent's cause of action. *Mohawk,* 982 S.W.2d at 498.

### B. No-Evidence Motion for Summary Judgment

Payne's no-evidence motion for summary judgment asserted: appellants "cannot, by pleadings, depositions, answers to interrogatories, admissions on file, or other admissible evidence, demonstrate there is

evidence to support its cause of action that E.M. Payne is personally liable for the alleged acts or omissions of the other Defendants." He further asserted:

Plaintiffs' cause of action against E.M. Payne individually requires proof of the following elements:

A. That E.M. Payne committed or actively participated [sic] any of the acts or omissions alleged by Plaintiffs to support their causes of action;

B. That the corporate status of Tejas Building & Development Co., Inc. is used as a means of [sic] perpetrate a fraud;

C. That Tejas Building & Development Co., Inc. operates as a tool or business conduit of E.M. Payne;

D. That Tejas Building & Development Co., Inc.'s corporate status is used to evade an existing legal obligation;

E. That Tejas Building & Development Co., Inc.'s corporate status is used to achieve or perpetuate a monopoly;

F. That Tejas Building & Development Co., Inc.'s corporate status is used to circumvent a statute;

G. That Tejas Building & Development Co., Inc.'s corporate status is relied on as a protection of crime or to justify a wrong.

After adequate time for discovery, Plaintiffs cannot provide credible evidence to hold E.M. Payne personally liable for the alleged acts of the other Defendants because Tejas Building & Development Co., Inc. is a corporation and there is no credible evidence to support any claim that E.M. Payne as either a shareholder, director or officer of the corporation is personally liable for the alleged acts of the corporation's agents or employees.

### C. SUMMARY JUDGMENT EVIDENCE

In their response to the motion, appellants contended they were fraudulently induced to enter into a contract for deed with Tejas Building & Development Company and that "Payne's ownership and control of Tejas, the disregard of corporate formalities, the capitalization of Tejas, and Payne's assent to and ratification of Tejas's fraud would support a finding that failing to 'pierce the veil' in this case 'would promote injustice and lead to an inequitable result.'" Appellants attached the following evidence to their response:

#### 1. *Affidavit of Appellant Veronica Dominguez*

Veronica Dominguez relied on Torres's representation that all of the lots being offered for sale by Tejas Building & Development Company, Inc, as Centerpoint lots, were restricted as to use for single family brick homes; that Torres never indicated that some of the lots shown on the Centerpoint flyer were not Centerpoint lots and were not subject to the use restriction; and that when individuals began to install trailer homes near their lot, Dominguez and her husband sent Torres a letter advising him that they planned to return their lots to Tejas Insurance Agency/Tejas Building & Development Company. Dominguez attached the following documents to her affidavit:

(a) The Dominguezes' "Contract of Deed" with Tejas Building & Development, Inc.;

(b) A Centerpoint Flyer;

(c) A Fax from Torres to Dominguez indicating the size and cost of Centerpoint lots and that the lots are restricted for brick homes;

(d) A letter from the Dominguezes to Torres advising him of their decision to return their lots in the Centerpoint subdivision to Tejas Insurance

Agency/Tejas Building & Development Company and that their "attempts to meet with Mr. Ed (Bud) Payne, President of the properties, were unsuccessful;" and

(e) A letter from David Embry to the Dominguezes reiterating that they should accept Tejas's offer to allow them to return one lot and "applying [the] equity to the other lot [they] retained at Centerpoint" while taking advantage of a discounted price in another lot in the Tejas Cuatro subdivision; the letter further states "Please understand that [Payne] does not have time to spend on the daily operations of Tejas because of his busy schedule with Payne Dealer Group and delegates such duties to [Torres], myself and others."

2. *Affidavit of Appellants' Attorney, Harold Tummel*

Harold Tummel identified the following documents attached to his affidavit:

(a) The Defendants' First Supplemental Responses to Plaintiffs' Amended Requests for Production Propounded to Defendants;

(b) The Defendants' First Supplemental Responses to Plaintiffs' First Set of Interrogatories;

(c) A document titled "Unanimous Written Consent of Shareholders of Tejas Building & Development Company, Inc.," signed on May 28, 1993, indicating that E.M. Payne and E.J. Payne are the directors of the corporation;

(d) A document titled "Unanimous Written Consent of Directors of Tejas Building & Development Company, Inc.," signed on May 28, 1993, indicating that E.M. Payne is President, E.J. Payne is Vice President, and Paul E. Rose is Secretary–Treasurer of the corporation;

(e) A Stock Transfer Ledger, showing that E.J. Payne owns 250 shares of stock and E.M. Payne owns 750 shares of stock in the corporation;

(f) A balance sheet of Tejas Building & Development Company, Inc.;

(g)-(*l*) The Plaintiffs' Original Petition through Sixth Amended Petition;

(m) Rumaldo Lozano's Responses to Defendants' Interrogatories, reflecting communications with Torres about the Centerpoint lots;

(n) Each Plaintiff's Contract of Deed with Tejas;

(*o*) Eddie Torres's Deposition: Torres is employed as an insurance salesman for Tejas Insurance and a real estate salesman for Tejas Building & Development; Payne is an owner of the corporation and Torres "answers to him;" Payne and Embry fixed the prices for the lots, terms and conditions for financing, and laid out the subdivisions; Torres was responsible for the advertising and had the authority to sign a contract for deed with a prospective buyer; Centerpoint lots were intended for permanent homes as opposed to mobile homes; Torres "thought he would" have discussed with the potential buyers the fact that the Centerpoint lots were to be used only for residential single-family homes; he does not believe he spoke with potential buyers regarding the prohibition of mobile homes or trailers in the subdivision, but he does not recall anyone asking about it; if anyone had asked, he would have told them mobile homes and trailers were prohibited; Payne would be familiar with what Torres was properly authorized

to say about the property at Centerpoint;

(p) Edwin M. Payne's Deposition: Payne owns 75% of Tejas, and his father, E.J. Payne, owns the remaining 25%; he is not sure who the current directors are; his elderly father is not active in the corporation; he believes he is CEO and Embry is President; he believes Embry is President because "[Payne doesn't] spend any time managing or being a part of Tejas, and, with that condition, we felt like we needed more direction from somebody that was more full-time.... [Payne has] never had very much to do with this company;" Paul Rose, an employee of Payne's auto dealership, is the bookkeeper for Tejas; when warranted, Payne met with Embry at Payne's auto dealership concerning Tejas;

(q) David Embry's Deposition: As president of Proteus Corporation, Embry helped Tejas develop some properties by "going through the process to get them platted, planned and developed;" when Embry received the Dominguezes' letter, he discussed the matter with Torres and Payne and "[Payne] asked [Embry], you know, as part of what I was doing anyway to just check this out and see what their situation was;" "[Payne] wouldn't have the time to have contact with prospective buyers. That's exactly why he delegated those things to Eddie, and then, you know, I came on board, you know, in a consultant fashion...." When asked whose decision it was not to go along with the Dominguezes' proposal, Embry stated, "I would just say it was a joint decision of [Payne] and Eddie and I;" and

(r) Jaime Perez's Deposition: Perez and his wife bought a lot on Jade Drive in Centerpoint Subdivision from Torres and built a home on the lot; before Perez bought the lot, Torres told him "a lot of things, a lot of promises that he made to me;" Torres told Perez that Centerpoint Subdivision was restricted to brick homes only; Perez was not told that some of the lots in the Centerpoint flyer were not in Centerpoint Subdivision; and he was not told that the lots that were not in Centerpoint Subdivision were not restricted to brick homes.

### D. ANALYSIS

Appellants contend the trial court erred in granting Payne's no-evidence motion for summary judgment because the evidence they proffered was sufficient to support a finding: (1) that Tejas ratified fraud committed by Torres, and Payne participated in, and assented to, such ratification, and (2) there was such unity between Payne and Tejas that Tejas ceased to be separate, and that injustice would result if Payne were not held personally liable for such fraud.

According to the majority, the following evidence, brought forth by appellants, is more than a scintilla of probative evidence to raise a genuine issue of material fact:

Payne owned two-thirds of Tejas's stock, with the other one-third owned by his elderly father who was not active in Tejas's business. Since 1993, Payne and his father have been the only directors. The record also raises fact questions as to alter ego; for example, in Payne's deposition testimony, Payne testified that he did not know his specific title, nor who the other directors were. Tejas's corporate meetings were held at Payne's car dealership office. The rec-

ord also shows that Payne used some of his personnel from the dealership to handle bookkeeping functions for Tejas.

In his brief, Payne argues that "[the facts presented] are not enough to pierce the corporate veil." The majority acknowledges that "merely because a single person owns the vast majority of shares in a corporation, that evidence alone is not sufficient to establish that the corporation was the alter ego of an individual," *see* *Aztec Mgmt. & Inv. Co., Inc. v. McKenzie,* 709 S.W.2d 237, 239 (Tex.App.-Corpus Christi 1986, no writ), but concludes that Payne's arguments "address the merits of the case at the trial level, and while they may afford Payne a stronger argument in front of a jury, that still does not change the fact that reasonable, fair minds could differ on their conclusions." I disagree.

The corporate form normally insulates shareholders, officers, and directors from personal liability for corporate obligations; but when these individuals abuse the corporate privilege, courts will disregard the corporate fiction and hold them individually liable. *Castleberry v. Branscum,* 721 S.W.2d 270, 271 (Tex.1986); *Gonzales County Water Supply Corp. v. Jarzombek,* 918 S.W.2d 57, 61 (Tex.App.-Corpus Christi 1996, no writ). We disregard the corporate fiction, even though corporate and individual property have been kept separate, when the corporate form has been used as part of a basically unfair device to achieve an inequitable result. *Castleberry,* 721 S.W.2d at 272.[1] Specifically, we disregard the corporate fiction:

(1) when the fiction is used as a means of perpetuating fraud;

(2) where a corporation is organized and operated as a mere tool or business conduit of another corporation;

(3) where the corporate fiction is resorted to as a means of evading an existing legal obligation;

(4) where the corporate fiction is employed to achieve or perpetuate monopoly;

(5) where the corporate fiction is used to circumvent a statute; and

(6) where the corporate fiction is relied upon as a protection of crime or to justify wrong.

*Id.*

Alter ego is one basis for disregarding the corporate fiction when there is such unity between a corporation and an individual that an adherence to the fiction of a separate existence would, under the particular circumstances, sanction a fraud or promote an injustice. *Id.* To determine whether an alter ego relationship exists, the courts look at the totality of the dealings and relationships between the corporation and the individual. *Mancorp, Inc. v. Culpepper,* 802 S.W.2d 226, 228 (Tex. 1990). Alter ego may be shown from the total dealings of a corporation and individual, including: (1) the degree to which corporate and individual property have been kept separately; (2) the amount of financial interest, ownership, and control the individual maintains over the corporation, and (3) whether the corporation has been used for personal purposes. *Castleberry,* 721 S.W.2d at 272; *see* Tex. Bus. Corp. Act Ann. art. 2.21, § A(3) (Vernon Supp.2002). The rationale behind the alter ego doctrine is that "if the shareholders themselves disregard the separation of the corporate enterprise, the law will also

---

1. *Castleberry v. Branscum,* 721 S.W.2d 270 (Tex.1986), was overruled by Texas Business Corporation Act article 2.21, § A(3) to the extent that failure to observe corporate formalities is no longer a factor in proving alter ego. *See* Tex. Bus. Corp. Act Ann. art 2.21, § A(3) & cmt. (Vernon Supp.2002).

disregard it so far as necessary to protect individual and corporate creditors." *Id.* However, the fact that a majority or even all of the stock in a corporation is owned by a single individual does not of itself make the corporation the alter ego of the individual. *Aztec Mgmt.,* 709 S.W.2d at 239.

After reviewing the record and examining the totality of the relationship between Payne and Tejas, I conclude that the evidence presented by appellants in response to Payne's no-evidence motion for summary judgment is not more than a scintilla of evidence. While the evidence establishes that Payne was the majority owner, CEO, and a director of the corporation, it does not establish that Tejas was the alter ego of Payne. The summary judgment evidence is replete with references to the fact that Payne did not spend time managing or being a part of Tejas, rather the duties of the business were delegated to others. For example, Torres was responsible for advertising the Centerpoint lots, he showed and discussed the lots with Dominguez and Perez, and signed the contracts for deed with Dominguez and Perez. While Payne may have had corporate meetings at his auto dealership, there is no more than a scintilla of evidence in the record that individual and corporate property have not been kept separately or that the corporation has been used for personal purposes. Payne's majority ownership, without other evidence, does not support appellants' alter ego and ratification of fraud theories.

I would hold that the trial court did not err in granting Payne's no-evidence motion for summary judgment. Therefore, I respectfully dissent.