

# NUMBER 13-19-00374-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

JNM EXPRESS, LLC,
ANCA TRANSPORT, INC.,
OMEGA FREIGHT LOGISTICS, LLC,
JORGE MARIN, AND SILVIA MARIN,                          Appellants,

v.

LAURO LOZANO JR. AND
IRENE LOZANO,                                            Appellees.

---

On appeal from the 93rd District Court
of Hidalgo County, Texas.

---

# MEMORANDUM OPINION

Before Justices Benavides, Longoria, and Tijerina
Memorandum Opinion by Justice Longoria

Appellees Lauro Lozano and Irene Lozano filed suit against appellants JNM

Express, LLC, ANCA Transport, Inc., Omega Freight Logistics, LLC (collectively, the

Businesses), Jorge Marin, and Silvia Marin for negligence and gross negligence in relation to an accident that occurred when Lauro crashed the eighteen-wheeler he was driving. The jury returned a verdict in favor of appellees.

By ten issues, appellants argue that: (1) the jury charge improperly defined "employee" and "employer"; (2) there was legally and factually insufficient evidence to support the finding that each of the Businesses were Lauro's employers; (3) there was legally and factually insufficient evidence to support the finding that appellants were negligent; (4) the trial court erred by admitting Lauro's medical records; (5) the trial court erred by admitting appellants' tax returns; (6) the trial court erred by awarding exemplary damages against ANCA and Omega because appellees did not plead for them; (7) the trial court erred by awarding damages to Irene; (8) the trial court erred by holding Jorge and Silvia jointly and severally liable for the damages, including the exemplary damages; (9) the exemplary damages were unsupported and excessive; and (10) cumulative errors caused the rendition of an improper judgment. We affirm in part, and we reverse and render in part.

## I. BACKGROUND

On May 6, 2015, at approximately 1:30 a.m., Lauro fell asleep while driving an eighteen-wheeler from Edinburg, Texas to Maryland and crashed into another eighteen-wheeler in front of him. Lauro was flown via helicopter to a hospital in Alabama where he was treated for his injuries, which included fractured ribs, a shattered pelvis, and a shattered left foot.

2

In February 2017, the Lozanos filed suit against appellants for negligence and gross negligence. According to the Lozanos, appellants were negligent by disregarding federal regulations concerning the amount of rest truck drivers are required to receive between trips, which led to Lozano undertaking the drive while under-rested. More specifically, Lozano alleged that the appellants told him to make the drive even though Lozano had informed appellants that he needed more off-duty time per federal regulations. The Marins are the sole owners and operators of the Businesses. Lozano alleged that he was an employee of all three Businesses when he crashed, but the appellants claim that Lozano only worked for JNM at the time of the crash. The Lozanos sought to pierce the corporate veil, alleging that the Marins used the Businesses to "evad[e] safety regulations." Lauro sought economic, noneconomic, and exemplary damages; Irene only sought noneconomic damages.

Jury trial began in June 2017 with the Lozanos and Marins being the primary witnesses. The jury found that the Businesses were all the "employers" of Lauro and that the Businesses were all negligent and grossly negligent. The jury awarded the following to the Lozanos: $3,880,006.34 for actual damages to Lauro; $156,932.28 for prejudgment interest on his past actual damages; $1,125,000 for actual damages to Irene; and $45,976.03 to Irene for prejudgment interest on her past actual damages. The Businesses and the Marins were jointly and severally liable for these damages. Additionally, the jury awarded $25,000,000 against each of the Businesses individually for exemplary damages. The Marins were jointly and severally liable on each of the exemplary damage awards. The trial court entered judgment in accordance with the jury's findings. Appellants

3

filed a motion for judgment notwithstanding the verdict, a motion for new trial, and a motion to modify the judgment. The trial court granted the motion to modify, reforming the judgment as to reduce the exemplary damages down to $2,910,012.68 against each of the Businesses, but the trial court denied the other motions. This appeal ensued.

## II. JURY CHARGE

In their first issue, appellants argue that the trial court erred by improperly defining "employer" and "employee" in the jury charge and by refusing to submit appellants' common-law defenses.

By their sixth issue, appellants complain that the trial court erred by submitting jury questions on, and subsequently awarding, exemplary damages against ANCA and Omega because appellees did not plead for them against those parties.

### A. Standard of Review & Applicable Law

Generally, the trial court has considerable discretion in determining the proper jury instructions, and we will only reverse if the trial court abused its discretion. *See Columbia Rio Grande Healthcare, L.P. v. Hawley*, 284 S.W.3d 851, 856 (Tex. 2009); *Fluor Daniel, Inc. v. Boyd*, 941 S.W.2d 292, 295 (Tex. App.—Corpus Christi–Edinburg 1996, writ denied). The trial court abuses its discretion if it acts arbitrarily or fails to follow guiding rules and principles. *See Hawley*, 284 S.W.3d at 856; *Fluor Daniel*, 941 S.W.2d at 295.

"The chief guiding principle the trial court should refer to when submitting instructions and definitions is Rule 277." *Fluor Daniel*, 941 S.W.2d at 295; *see* TEX. R. CIV. P. 277. According to Rule 277, the trial court should give "such instructions and definitions as shall be proper to enable the jury to render a verdict." TEX. R. CIV. P. 277.

4

An instruction is proper if it "(1) assists the jury, (2) accurately states the law, and (3) finds support in the pleadings and evidence." *Hawley*, 284 S.W.3d at 856; *see Ohrt v. Union Gas Corp.*, 398 S.W.3d 315, 338 (Tex. App.—Corpus Christi–Edinburg 2012, pet. denied).

However, "an appellate court will not reverse a judge for a charge error unless that error was harmful because it probably caused the rendition of an improper judgment or probably prevented the petitioner from properly presenting the case to the appellate courts." *Thota v. Young*, 366 S.W.3d 678, 687 (Tex. 2012) (internal quotations omitted); *see* TEX. R. APP. P. 44.1. Charge error is considered harmful "if it relates to a contested, critical issue." *Thota*, 366 S.W.3d at 687 (quoting *Hawley,* 284 S.W.3d at 856).

"A party objecting to a charge must point out distinctly the objectionable matter and the grounds of the objection." TEX. R. CIV. P. 274. Additionally, if no objection was made to the trial court that matches the complaint on appeal, then the issue has not been preserved for appellate review. TEX. R. APP. P. 33.1; *Saenz-Guerrero v. Gardner*, 587 S.W.3d 191, 194 (Tex. App.—Houston [14th Dist.] 2019, no pet.) ("Objections to the charge and requests for instructions must comport with the arguments made on appeal."). A complaint regarding legal sufficiency may be made for the first time on appeal only in a civil nonjury trial. TEX. R. APP. P. 33.1(d).

## B. Analysis

### 1. Employer/Employee Question

Question 1 of the jury charge read as follows:

You are instructed that an "employee" means any individual who is employed by an employer and who in the course and scope of employment

5

directly affects commercial motor vehicle safety. "Employee" includes a driver of a commercial motor vehicle, including an independent contractor while in the course of operating a commercial motor vehicle.

You are further instructed that an "employer" means any person engaged in a business affecting interstate commerce who owns or leases a commercial motor vehicle in connection with that business, or assigns employees to operate it.

You are further instructed that a person may be considered the employee of more than one employer at one time as to the same act, if the service to one does not involve the abandonment of the service to the other.

These definitions for employer and employee are pulled from the Federal Motor Carrier Safety Regulations (FMCSR). Concerning these definitions, appellants made the following objection to the trial court: "Omega Freight, which is the last one on the list, is not a motor carrier. It's not a driver. It's a broker. So these definitions would not apply to Omega Freight." The objection made no mention of ANCA or JNM. Appellants also did not complain that the definitions were erroneous; rather, they complained that the definition did not apply to Omega. In contrast, appellants make the following argument on appeal: "Congress did not intend drivers to benefit from the 'employment' definitions of the [FMSCR] in lawsuits against the motor carriers who hired them." In other words, they argue that the definitions are improper because the FMCSR is intended to protect third-party members of the public, not the employees themselves. They additionally argue on appeal that the FMSCR definitions "do not alter state-law employment relationships." However, none of the objections to the charge raised on appeal comport with the objections appellants made to the trial court. *See Saenz-Guerrero*, 587 S.W.3d at 194. Therefore, this issue is not preserved for our review. *See id.*; *see also* TEX. R. APP. P. 33.1.; TEX. R. CIV. P. 272 (stating that any objections to the charge that are not presented

6

to the trial court in writing or dictated to the court reporter in the court's presence before the charge is read to the jury "shall be considered waived").

Appellants additionally assert as part of their first issue that the trial court erred by failing to submit jury questions on the common-law defenses of sole proximate cause and comparative fault. However, a trial court is not required to submit any question or instruction to the jury unless it is first offered in writing and in "substantially correct wording." *See* TEX. R. CIV. P. 278; *Pittman v. Lightfoot*, 937 S.W.2d 496, 514 (Tex. App.—San Antonio 1996, writ denied). Additionally, appellants need to demonstrate that the proposed questions assist the jury, accurately state the law, and find support in the pleadings and evidence. *See Hawley*, 284 S.W.3d at 856; *Ohrt*, 398 S.W.3d at 338. Appellants' proposed charge included the following definition for sole proximate cause:

> There may be more than one proximate cause of an occurrence, but if an act or omission of any person *not a party to the suit* was the 'sole proximate cause' of an occurrence, then no act or omission of any party could have been a proximate case [sic].

(emphasis added). But there were no allegations or evidence produced at trial showing that any nonparty acted or failed to act in such a way as to be the proximate cause of Lauro's injuries. Thus, appellants have failed to demonstrate that their proposed question on sole proximate cause accurately stated the law and was supported by the evidence. *See Hawley*, 284 S.W.3d at 856; *Ohrt*, 398 S.W.3d at 338. The trial court did not err in failing to submit a question on sole proximate cause.

Likewise, appellants complain that the trial court erroneously declined to submit a question on comparative fault. However, "a nonsubscribing employer is not entitled to a jury question on its employee's alleged comparative responsibility." *Kroger Co. v. Keng*,

23 S.W.3d 347, 352 (Tex. 2000). Because appellants do not dispute that the Businesses are nonsubscribing employers, the trial court did not err in failing to submit a question on comparative fault. *See id.* We overrule appellants' first issue.

### 2. Gross Negligence Question

In two paragraphs, appellants argue that the trial court erred by including ANCA and Omega in jury questions seven and eight regarding gross negligence and the award of exemplary damages. More specifically, appellants complain that it was improper to include ANCA and Omega on these questions because appellees did not plead exemplary damages against ANCA and Omega, and during a pre-trial hearing on the parties' motions in limine, the parties agreed not to submit any issues not specifically pleaded. However, appellants raised none of these issues below; they completely failed to bring any objections they had concerning questions seven and eight to the trial court's attention. Appellants have waived this issue. *See* TEX. R. APP. P. 33.1; TEX. R. CIV. P. 272; *Saenz-Guerrero*, 587 S.W.3d at 194. We overrule appellants' sixth issue.

### III. SUFFICIENCY OF THE EVIDENCE

Appellants argue that there is legally and factually insufficient evidence to support: the finding that the Businesses were all Lauro's employers (issue two); the finding that the Businesses were negligent (issue three); and the award of damages to Irene (issue seven).

### A. Standard of Review & Applicable Law

"The starting point generally of a legal or factual sufficiency review is the charge and instructions to the jury." *TXU Portfolio Mgmt. Co., L.P. v. FPL Energy, LLC*, 529

8

S.W.3d 472, 492 (Tex. App.—Dallas 2016, no pet.) (Evans, J., dissenting); *see Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 762 (Tex. 2003) (observing that the starting point in a sufficiency review is generally the charge and instructions to the jury so that the reviewing court may have a "clear understanding of the evidence that is pertinent to its inquiry"). "Even if another legal theory was argued to the jury and explained by the lawyers in argument, we are bound by the instructions given to the jury and presume that the jury followed those instructions." *Seger v. Yorkshire Ins. Co.*, 503 S.W.3d 388, 407 (Tex. 2016).

> The evidence is legally insufficient if:
>
> (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact.

*Bustamante v. Ponte*, 529 S.W.3d 447, 455–56 (Tex. 2017); *see City of Keller v. Wilson,* 168 S.W.3d 802, 810 (Tex. 2005). More than a scintilla of evidence exists when the evidence supporting the finding, as a whole, "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Merrell Dow Pharms. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997); *Transp. Ins. v. Moriel,* 879 S.W.2d 10, 25 (Tex. 1994).

If the evidence is so weak as to do no more than create a mere surmise or suspicion of its existence, its legal effect is that it is no evidence. *See Haynes & Boone v. Bowser Bouldin, Ltd.,* 896 S.W.2d 179, 182 (Tex. 1995), *abrogated on other grounds by Ford Motor Co. v. Ledesma*, 242 S.W.3d 32 (Tex. 2007). Conversely, evidence

conclusively establishes a vital fact when the evidence is such that reasonable people could not disagree in their conclusions. *See City of Keller,* 168 S.W.3d at 814–17. In conducting a legal sufficiency review, we must consider the evidence in the light most favorable to the trial court's findings and indulge every reasonable inference that would support them. *See Bustamante*, 529 S.W.3d at 456; *City of Keller,* 168 S.W.3d at 822.

Under a factual sufficiency review, we consider and weigh all of the evidence and set aside the judgment below only if it is so against the great weight and preponderance of the evidence so as to be wrong and unjust. *See City of Keller,* 168 S.W.3d at 826.

"Negligence actions in Texas require a legal duty owed by one person to another, a breach of that duty, and damages proximately caused by the breach." *Nabors Drilling, U.S.A., Inc. v. Escoto*, 288 S.W.3d 401, 404 (Tex. 2009) (internal quotations omitted).

## B. Analysis

### 1. Finding the Businesses to be Lauro's Employers

As discussed above, appellants did not argue to the trial court that the definitions of "employer" and "employee" were incorrect; they only argued that the definition did not apply to Omega. Therefore, we are bound by the instructions given to the jury and presume that the jury followed those instructions. *See Seger*, 503 S.W.3d at 407; *Golden Eagle Archery*, 116 S.W.3d at 762.

Appellants argue that Lauro was only working for JNM at the time of the accident. Indeed, the evidence reflected that JNM owned the eighteen-wheeler that Lauro crashed and that JNM was the one paying Lauro; however, ANCA was the entity that originally hired Lauro. At the time of the crash, JNM was leasing the vehicle to ANCA, using ANCA's

10

permits, and pulling a trailer owned by Allegiance.[1] Additionally, Lauro wrote "ANCA" at the top of all his logs. Omega, as the dispatcher, had the opportunity to assign a different driver to this particular drive but instead assigned Lauro. The crash report generated by the Alabama police investigators listed Omega as the employer and listed Omega's unique Department of Transportation number.

Thus, there was ample evidence that JNM and ANCA were engaged in a business affecting interstate commerce and that each of them either owned or leased a commercial motor vehicle in connection with that business. Likewise, there was sufficient evidence to demonstrate that Omega assigned employees to operate said motor vehicle. Thus, based on the instruction provided to the jury in this case, we hold that the evidence was legally and factually sufficient to support the jury's finding that all three of the Businesses were the employers of Lauro. *See Port Elevator-Brownsville v. Casados*, 358 S.W.3d 238, 242 (Tex. 2012) (observing that for worker's compensation negligence claims, an employee may have more than one employer); *Wingfoot Enters. v. Alvarado,* 111 S.W.3d 134, 143 (Tex. 2003) (holding that an individual was the employee of both the temporary staffing agency and the client company that directed the details of his work). We overrule the appellants' second issue.

## 2. Finding the Businesses to be Negligent

Even though appellants do not dispute that Lauro suffered actual harm, they challenge the existence of a legal duty, whether they breached any duty, and the existence of proximate cause.

---

[1] Although not a party to this appeal, Allegiance is another business entity owned by the Marins.

Appellants first contest the jury's finding on the legal duty, alleging that Lauro's decision to drive was voluntary and that they have no duty to protect employees from "hazards that are commonly known or already appreciated by employees." *Nabors Drilling*, 288 S.W.3d at 412. In *Nabors Drilling*, the Texas Supreme Court concluded: "we do not impose a duty to train employees regarding the commonly-known dangers of driving while fatigued." *Id.* at 413. Lauro admitted that he was tired and that he was aware that driving an eighteen-wheeler while fatigued was "careless." However, appellants admitted at trial that under federal law, they were obligated to ensure that drivers follow the federal regulations to prevent driver fatigue.

The Marins and their drivers are required under federal regulation to keep accurate logs to record their driving hours. Drivers must go off-duty for thirty-four consecutive hours after sixty consecutive hours on the road in a seven-day period, or after driving seventy consecutive hours in an eight-day workweek (the "thirty-four-hour rule"). Lauro testified that he ignored the thirty-four-hour rule by order of the Marins because he was afraid of losing his job if he declined. Another driver who previously worked for the Marins, Alberto Ybarra, also testified that the Marins regularly pushed their drivers to ignore the thirty-four-hour rule.

Lauro claimed that on May 4, 2015, he was completing a roundtrip from the Rio Grande Valley to Jessop, Maryland. According to Lauro, this roundtrip is long enough that a driver would ordinarily need a thirty-four-hour rest upon coming home before heading back out to comply with federal regulations. However, Lauro testified that Jorge called him as he was completing the trip and asked Lauro to go immediately back to Jessop.

12

Lauro told Jorge that he needed rest and that his logbook would show that he legally cannot be on the road. However, according to Lauro, Jorge told him to "move [his] logbook back." Lauro began his drive back to Jessop, Maryland at 5 a.m. on May 5, meaning it was impossible to have gotten the thirty-four hours of required rest. Lauro crashed while on this drive.

While it is true that employers do not need to generally protect or warn employees of commonly known hazards, it is also true that employers have a duty to ensure their employees follow applicable regulations. *See* 49 C.F.R. § 390.11 ("Whenever in part 325 of subchapter A or in this subchapter a duty is prescribed for a driver or a prohibition is imposed upon the driver, it shall be the duty of the motor carrier to require observance of such duty or prohibition."); *N. Am. Van Lines, Inc. v. Emmons*, 50 S.W.3d 103, 113 (Tex. App.—Beaumont 2001, pet. denied) (finding the employer had a legal duty when they "had the right to inspect records to ensure [employees'] compliance with the law and with their driver requirements and safety regulations," and when the employer had the authority to administer discipline for violation of those regulations, and they had the ability to prevent drivers from "making further hauls for them"); *D. Houston, Inc. v. Love*, 92 S.W.3d 450 (Tex. 2002) (concluding that even though drinking while driving is a commonly known hazard, the employer "has a duty to take such action as a reasonably prudent employer under the same or similar circumstances would take to prevent the employee from causing an unreasonable risk of harm to others"); *see also Sentry Select Ins. Co. v. Drought Transp., LLC*, 15-CV-890 (RCL), 2017 WL 5382168, at *2 (W.D. Tex. May 3, 2017) (mem. op.) (observing that a motor carrier has a duty to require its drivers

13

to observe duties proscribed under federal law, and that if an employer "fails to enforce those duties, it may be liable for its own negligence in failure to follow the FMSCR"). Therefore, appellants owed Lauro a duty to ensure he followed federal regulations regarding driver fatigue and did not cause an unreasonable risk of harm to others.

Appellants next argue that there is no evidence of breach when an employer simply requires an employee to do his job. *See Great Atlantic & Pac. Tea Co. v. Evans*, 175 S.W.2d 249, 251 (Tex. 1943). However, the evidence at trial established that appellants went beyond simply requiring Lauro to perform his job. If they simply required him to perform his job, they would have followed federal regulations and allowed him to rest for thirty-four hours before heading back out. Instead, according to evidence produced at trial, they insisted on Lauro taking another driving trip without taking the required off-time in between. Likewise, despite the federal requirement to maintain accurate logbooks, the evidence showed that appellants did not maintain accurate logbooks and encouraged their employees to falsify log entries to avoid violations of the thirty-four-hour rule. In other words, instead of ensuring Lozano followed federal regulations, appellants actively encouraged Lozano to violate federal regulations. Therefore, we conclude there was sufficient evidence of a breach of duty.

Lastly, appellants argue that there is insufficient evidence of proximate causation. They argue that their own failure to keep accurate logbooks did not cause the accident in question. Likewise, they argue the accident was not caused by the allegedly falsified logbook entries or appellants' alleged insistence on breaking federal regulations. Instead, they assert that the accident was proximately caused by Lauro's voluntary decision to

14

"intentionally ignore the known risks of driving while fatigued." However, if appellants had followed federal regulations, Lauro would not have been on the road at all. Lauro informed appellants that he needed more rest time according to his log book. The only reason Lauro was driving at all was because of appellants' insistence that he falsify his logs and break the thirty-four-hour rule. Being involved in a motor-vehicle accident is a foreseeable danger of asking Lauro to drive without the required off-time, encouraging Lauro to falsify his logs, and then requiring him to drive across country. *See Emmons*, 50 S.W.3d at 113. Lauro additionally testified that he was afraid to disobey the appellants' requests for fear of being fired. There was sufficient evidence that appellants proximately caused Lauro's damages.

In summary, appellants owed their drivers a duty to ensure that they did not drive in violation of federal regulations concerning driver fatigue. There was evidence that federal regulations require employers to keep accurate logs and to enforce the thirty-four-hour rule with their drivers. According to Lauro and Ybarra, appellants consistently encouraged their drivers to ignore federal regulations and actively insisted that the employees falsify their logbooks so as to avoid compliance with the thirty-four-hour rule. Appellants conceded that they were required to know and follow federal regulations, yet the evidence also suggested that appellants failed to maintain accurate logs. The record reflects that Jorge was fully aware that Lauro would be unable to comply with the thirty-four-hour rule and yet asked him to complete this trip. Additionally, the record reflects that Lauro would not have been driving but for appellants' insistence. And this sort of accident was foreseeable because the federal regulations concerning driver fatigue were designed

to prevent this type of accident. Therefore, we conclude that that there was legally and factually sufficient evidence to support a negligence finding. *See Bustamante*, 529 S.W.3d at 455. We overrule appellants' third issue.

### 3. Damages for Irene

In their seventh issue, appellants argue that there was legally and factually insufficient evidence concerning Irene's damages. Appellants also assert that it was error to even submit question four concerning damages to Irene, let alone award her damages, because she was not defined as a plaintiff in the petition.

The jury awarded Irene $100,000 for loss of past household services, $200,000 for loss of future household services, $275,000 for past loss of consortium, and $550,000 for future loss of consortium. Appellants complain that question four should not have been submitted to the jury because the petition never specifically sought consortium damages for Irene. However, the petition did ask for loss of consortium damages, which would by necessity be meant for Irene because Lauro cannot recover loss of consortium in this case. And the petition prayed that Irene recover actual damages from appellants. We conclude the trial court did not err in submitting question four.

Additionally, concerning the sufficiency of the evidence supporting the award of damages to Irene, appellants simply assert:

> Appellees testified that, since his accident, Lozano no longer cuts the grass, takes out the trash, uses a ladder, or changes the oil in his truck. "[N]o reasonable view of the evidence (or common knowledge and experience)" supports a finding of $100,000 in the past and $200,000 in the future for loss of these household services based on this testimony

16

Appellants fail to cite the record at all during this argument, and they only cite a single case, without any explanation as to how the case supports their position. Appellants fail to explain why the damages awarded to Irene are insufficient legally and factually. Thus, this part of the issue is inadequately briefed. *See* TEX. R. APP. P. 38.1(i). We overrule appellants' seventh issue.

## IV. ADMISSION OF EVIDENCE

In their fourth issue, appellants claim that the trial court erred by admitting Lauro's medical and insurance records. In their fifth issue, appellants argue that the trial court erred by admitting appellants' tax returns and a release of lien during the liability phase of trial.

### A. Standard of Review & Applicable Law

To obtain reversal of a judgment based on error in the admission or exclusion of evidence, an appellant must show that the trial court's ruling was in error and that the error was calculated to cause, and probably did cause, the rendition of an improper judgment. *See* TEX. R. APP. P. 44.1(a)(1).

"If a party objects to certain evidence, but later does not object when the same evidence is introduced, the party waives its objection." *Duperier v. Tex. State Bank*, 28 S.W.3d 740, 755 (Tex. App.—Corpus Christi–Edinburg 2000, pet. dism'd by agr.); *see Volkswagen of Am., Inc. v. Ramirez*, 159 S.W.3d 897, 907 (Tex. 2004) ("The general rule is error in the admission of testimony is deemed harmless and is waived if the objecting party subsequently permits the same or similar evidence to be introduced without objection."). However, even when similar evidence is introduced without objection, the

error may be preserved if a party obtained an earlier running objection. *See Katy Intern., Inc. v. Jinchun Jiang*, 451 S.W.3d 74, 94 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) ("If a party later permits the same or similar evidence to be introduced without objection, the error in the admission of testimony generally is harmless and is waived, unless the party obtains a running objection."). "A properly framed running objection can extend to testimony by all witnesses pertaining to the same type of evidence." *Huckaby v. A.G. Perry & Son, Inc.*, 20 S.W.3d 194, 203 (Tex. App.—Texarkana 2000, pet. denied). For a running objection to apply to multiple witnesses, the objection must plainly identify the source of the objectionable testimony, the subject matter of the expected objectionable testimony, and "the ways the testimony would be brought before the jury." *Ramirez*, 159 S.W.3d at 907; *see Katy Intern.*, 451 S.W.3d at 94 (finding that error was not preserved when one party obtained a running objection to an individual's testimony regarding the value of stock, but the party did not object later at trial when a different individual testified as to the value of stock); *Huckaby*, 20 S.W.3d at 203 (finding that error was not preserved when the party requested: "Judge, may we have a running objection to any—this officer testifying about any problems with the design of the road" but the party did not object to similar testimony from another witness).

**B. Analysis**

### 1. Insurance and Medical Records

Eleven days before trial, appellees filed their notice of filing of medical records affidavit and notice of filing of billing record affidavits. Appellants objected based on untimeliness, and the trial court sustained the objection. At trial, Lauro offered a letter

18

from his insurer, Blue Cross Blue Shield (BCBS), with an attached statement of benefits. Outside of the presence of the jury, appellants objected to the BCBS records, arguing that they failed the authenticity test and they constituted hearsay. The trial court overruled the objections. Lauro also offered medical records, which appellants objected to on hearsay grounds. Appellants also asserted that the trial court had in essence already sustained this objection by excluding Lauro's medical record affidavits as untimely. The trial court overruled the objection and told appellants that they can have a running objection "when they offer them in front of the jury." When Lauro discussed the medical records in front of the jury, appellants objected by stating, "Same objection as before." When Lauro testified concerning the BCBS records, appellants objected "on grounds of hearsay and authenticity," which the trial court overruled.

Later at trial, Irene testified concerning the same BCBS records. She testified that these records reflected "the medical charges because of [the] accident." She testified that the records showed how much BCBS had paid—$184,000.34—and the total amount billed—$609,680.49. Appellants did not object to this testimony. We find that the running objection made during trial was not specific enough as to apply to other witnesses such as Irene. *See Huckaby*, 20 S.W.3d at 203. And because appellants did not object when similar evidence was introduced through Irene, appellants have waived this issue. *See Duperier*, 28 S.W.3d at 755. We overrule appellants' fourth issue.

### 2. Tax Returns and Release of Lien

Because appellees sought exemplary damages, appellants moved to bifurcate the trial. The trial court granted the motion to bifurcate. During trial, appellees offered

19

appellants' tax returns, including the personal tax returns for the Marins. Appellants objected, citing the bifurcation order and asserting that the evidence constituted improper net worth evidence. Appellees argued in response that appellants had opened the door to net worth evidence by suggesting that they do not make much money as a small "mom and pop" business. The trial court overruled appellants' objection. Appellees also offered a release of lien, which showed that the Marins could not have repaid a construction loan without using business assets. The Lozanos offered the release of lien to support piercing the corporate veil; the Lozanos argued that the release of lien demonstrated that the Marins used business assets for personal use. Appellants objected to the release of lien as irrelevant, inflammatory, prejudicial, and inadmissible during the liability phase of trial. The trial court overruled appellants' objections.

However, before the tax returns or the release of lien were offered, Ybarra testified, estimating appellants' potential wealth, size, and income as of 2015. Appellants did not object to this testimony. Because appellants did not object when similar net worth testimony was offered through Ybarra, appellants have waived this issue. *See id.*

Additionally, even if the issue was preserved, appellants have not adequately demonstrated that this alleged error was calculated to cause, and probably did cause, the rendition of an improper judgment. *See* TEX. R. APP. P. 44.1(a)(1). Appellants argue that the jury's award of excessive damages suggests that the jury was unfairly prejudiced by the introduction of the net worth testimony. However, appellants fail to explain how or why approximately $5,000,000 in actual damages is excessive for a case involving a major eighteen-wheeler accident in which Lauro was seriously injured. We overrule appellants'

20

fifth issue.

## V. EXEMPLARY DAMAGES

In their eighth issue, appellants argue the trial court erred by holding the Marins jointly and severally liable for the damages, including the exemplary damages. By their ninth issue, appellants argue that the exemplary damages were unsupported by the evidence and excessive.

### A. Standard of Review and Applicable Law

"Gross negligence consists of both objective and subjective elements." *Goodyear Tire & Rubber Co. v. Rogers*, 538 S.W.3d 637, 644 (Tex. App.—Dallas 2017, pet. denied). To prevail on a gross negligence claim, the plaintiff must prove by clear and convincing evidence that:

> (1) when viewed objectively from the defendant's standpoint at the time of the event, the act or omission involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others, and (2) the defendant had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others.

*Id.* Clear and convincing means "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.*

We review the excessiveness of an exemplary damages award as a factual sufficiency challenge. *See Barnhart v. Morales*, 459 S.W.3d 733, 749 (Tex. App.—Houston [14th Dist.] 2015, no pet.).

> We will not set aside an exemplary damages award unless, after reviewing the entire record, we determine the exemplary damages award is so contrary to the overwhelming weight and preponderance of the evidence as

21

to be clearly wrong and manifestly unjust. When determining whether an exemplary damage award is excessive, we consider the following factors: (1) the nature of the wrong; (2) the character of the conduct involved; (3) the degree of culpability of the wrongdoer; (4) the situation and sensibilities of the parties; and (5) the extent to which such conduct offends a public sense of justice and propriety.

*Id.* (internal citations omitted); *see Alamo Nat. Bank v. Kraus*, 616 S.W.2d 908, 910 (Tex. 1981).

Exemplary damages must be reasonably proportioned to the actual damages. *See Alamo Nat. Bank*, 616 S.W.2d at 910. While there is no bright-line, concrete limit on exemplary damages, "in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process." *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003).

**B. Analysis**

**1. Joint and Several Liability for the Marins**

Appellants argue that the Marins should not have been held jointly and severally liable for any of the damages awarded against the Businesses because there was insufficient evidence to support a finding that the Marins were the alter ego of the Businesses.

Jury questions five and six asked whether the Marins were "responsible" for the conduct of the Businesses. These questions were submitted because appellees asserted that the Marins were the alter egos of the Businesses, and thus, these questions sought to pierce the corporate veil to hold the Marins personally responsible for the actions of the Businesses.

22

Under Texas law, corporations are presumed to be separate entities from their officers and shareholders. *See Richard Nugent and CAO, Inc. v. Estate of Ellickson*, 543 S.W.3d 243 (Tex. App.—Houston [14th Dist.] 2018, no pet.). However, the alter ego theory, which is an equitable doctrine, "is a basis for disregarding the corporate fiction, where a corporation is organized and operated as a mere tool or business conduit of another corporation." *Dominguez v. Payne*, 112 S.W.3d 866, 869 (Tex. App.—Corpus Christi–Edinburg 2003, no pet.) (internal quotations omitted).

> Alter ego is shown from the total dealings of the corporation and the individual, including the degree to which . . . corporate and individual property have been kept separately, the amount of financial interest, ownership and control the individual maintains over the corporation, and whether the corporation has been used for personal purposes.

*Id.* at 870.

The evidence at trial established that Jorge was the sole owner and operator of ANCA and JNM. Likewise, he and Silvia were the sole operators of Omega. All decisions concerning the Businesses, including income and capital flow, were controlled by the Marins. According to testimony at trial, Silvia was involved in all three of the Businesses. She handled paperwork, paid the employees, and verified driver logs and fuel receipts. Silvia specifically had control over reviewing how many hours Lauro had been on the road and whether he should be allowed to drive under the FMSCR. Additionally, evidence produced at trial suggested that the Marins used business funds to purchase real property. Based on the tax returns and release of lien, the record shows that in July 2015, the Marins borrowed $191,400 to purchase a new house. However, the record reflected that Jorge's income in 2015 was only $35,000. Jorge filed an individual tax return and

23

included JNM on the tax return. Approximately six months later, the entirety of the house loan was paid off and the lien was released. Silvia testified that they had financing on the home but she provided no evidence. Weighing the evidence before it, the jury could have concluded that it was impossible for the Marins to pay off the entire house loan without using corporate funds. We conclude that the evidence was legally and factually sufficient to support the jury's alter ego finding and hold the Marins jointly and severally responsible for the actions of the Businesses. See *Dominguez*, 112 S.W.3d at 869; *see also Tryco Enterprises, Inc. v. Robinson*, 390 S.W.3d 497, 509 (Tex. App.—Houston [1st Dist.] 2012, pet. dism'd) (finding that there was sufficient evidence to support a finding of joint and several liability against a married couple when they were the sole owners of several corporations, exercised absolute control over those corporations, shared employees between the corporations, used the same offices for the corporations, maintained a significant financial interest in the corporations, and used the corporations for personal purposes).

Jury question seven asked the jury to determine whether Lauro's harm resulted from the gross negligence of JNM, Omega, and/or ANCA. During the charge conference, appellees stated: "we're not seeking punitive damages against either of [the Marins] individually, and their names were dropped [from jury question seven]." No negligence or gross negligence questions were submitted to the jury concerning the Marins. Nevertheless, the trial court's judgment awarded exemplary damages against the Marins jointly and severally along with the Businesses. On appeal, appellees do not address the propriety of awarding exemplary damages against the Marins jointly and severally.

24

Concerning the award of exemplary damages against multiple defendants: "In any action in which there are two or more defendants, an award of exemplary damages must be specific as to a defendant, and each defendant is liable only for the amount of the award made against that defendant." TEX. CIV. PRAC. & REM. CODE ANN. § 41.006. Several courts have interpreted this to unambiguously mean that there can be no joint and several liability on exemplary damages. *See Horizon Health Corp. v. Acadia Healthcare Co., Inc.*, 520 S.W.3d 848, 873 (Tex. 2017); *Computek Computer & Office Supplies, Inc. v. Walton*, 156 S.W.3d 217, 224 (Tex. App.—Dallas 2005, no pet.). Therefore, the trial court erred by awarding exemplary damages against the Marins jointly and severally. We reverse the portion of the trial court's judgment that awards exemplary damages against the Marins jointly and severally. We partially sustain appellants' eighth issue.

## 2. Sufficiency and Excessiveness of the Damages

By three paragraphs, the appellants argue that the jury's award of actual damages was excessive and unsupported by the evidence because the "ratio of non-economic damages to economic damages [was] approximately 17:1." However, appellants cite no authority for the proposition that any such ratio between non-economic damages and economic damages is improper. We consider this portion of their ninth issue to be inadequately briefed. *See* TEX. R. APP. P. 38.1(i).

Appellants also complain that the jury's award of exemplary damages was unsupported and excessive. To be entitled to exemplary damages, appellees needed to prove, by clear and convincing evidence, both the objective and subjective prongs of gross negligence. *See Rogers*, 538 S.W.3d at 644. In other words, appellees needed to

show that appellants' actions objectively involved an extreme degree of risk and that appellants proceeded to act with indifference to the safety of others, despite subjective awareness of said risk. *See id.*

Appellants acknowledged at trial that the purpose of the federal regulations was to prevent fatigued drivers from driving because of the serious risk they posed to themselves and others. *See* 49 C.F.R. § 395.3. The evidence also showed that appellants regularly asked their drivers to falsify their logs to circumvent the regulations and drive excessive hours. According to Lauro, appellants specifically pushed him to drive on the cross-country trip that resulted in his accident, despite being aware that he did not have sufficient off-duty time, per federal regulations, to prevent fatigue. Appellants even asked Lauro to falsify his logs so that he could go on this trip. We conclude that the evidence was sufficient to support a finding of gross negligence. *See Elbar, Inc. v. Claussen*, 774 S.W.2d 45, 51 (Tex. App.—Dallas 1989, writ dism'd) (finding that there was sufficient evidence to support a gross negligence finding when the evidence showed that the company was aware that the driver's logs did not comply with federal regulations); *see also Andrews Transp., Inc. v. Ellison*, No. 09-92-304 CV, 1994 WL 485745, at *4 (Tex. App.—Beaumont Sept. 8, 1994, no writ) (not designated for publication) (concluding that the facts supported an award of exemplary damages when a company "required or permitted its drivers to falsify logs in order to drive excess hours," and the company was aware that "this policy would put drivers on the road who could hurt or kill fellow motorists just from fatigue").

Appellants further argue that the exemplary damages awarded were excessive. Appellees' actual damages awarded totaled $5,005,006. Appellants compare this to the exemplary damages awarded by the jury, which was a total of $75,000,000, arguing that a 15:1 ratio is excessive. However, that is not the amount of exemplary damages awarded in the final judgment. The trial court reduced the exemplary damages from $25,000,000 down to $2,910,012.68 for each business, for a total of $8,730,038.04. Because appellants make no arguments concerning whether $2,910,012.68 per business is excessive, we consider this issue to be inadequately briefed. *See* TEX. R. APP. P. 38.1(i). We overrule appellants' ninth issue.[2]

## VI. CUMULATIVE ERROR

By their tenth and final issue, appellants argue that even if we find none of the previous errors sufficient to warrant a new trial, the above errors cumulatively combine to create sufficient grounds for reversal and new trial.

It is true that a number of errors, although harmless when considered independently, may be harmful in their cumulative effect. *See Gregory v. Chohan*, 615 S.W.3d 277 (Tex. App.—Dallas 2020, no pet. h.). To support reversal based on cumulative error, a complaining party must show that "based on the record as a whole, but for the alleged errors, the jury would have rendered a verdict favorable to it." *Id.* We held that the trial court erred in holding the Marins jointly and severally liable on the exemplary damages, but otherwise, the trial court committed no error. Appellants have

---

[2] Even if appellants adequately briefed the issue, we note that using the actual exemplary damages awarded, the ratio between exemplary damages and actual damages is approximately 1.7:1. This is an amount that is unlikely to be found excessive. *See Horizon Health Corp. v. Acadia Healthcare Co., Inc.*, 520 S.W.3d 848, 880 (Tex. 2017).

not shown that but for that error, the jury would have rendered a verdict in their favor. *See id.* We overrule appellants' tenth issue.

## VII. CONCLUSION

We reverse the portion of the trial court's judgment holding the Marins jointly and severally liable for the exemplary damages awarded against each of the Businesses and render judgment holding the Marins not jointly and severally liable on the exemplary damage awards. We affirm the remainder of the judgment.

NORA L. LONGORIA
Justice

Delivered and filed on the
22nd day of April, 2021.